**Don WORTHINGTON,**
**Plaintiff/Appellee,**

v.

**MODINE MANUFACTURING COMPA-**
**NY, et al., Defendants/Appellants.**

Supreme Court of Tennessee,
at Knoxville.

Oct. 22, 1990.

Michael J. Mollenhour, Lewis, King, Krieg & Waldrop, Knoxville, for defendants/appellants.

Bruce D. Fox, Ridenour & Ridenour, Clinton, for plaintiff/appellee.

## OPINION

ANDERSON, Justice.

In this worker's compensation action, employer appeals the trial court's award of permanent partial disability benefits to employee resulting from a back injury. Employer contends the evidence is insufficient to support a permanent award because the percentage of anatomical disability did not change from the percentage assessed after an earlier work-connected back injury. We disagree and affirm.

### FACTS

The plaintiff/appellant, Don Worthington, age 51, was initially employed by defendant/appellee, Modine Manufacturing

Company, in 1969 as a material handler. In 1973 he became a fin machine set-up man and operator, which required him to load a machine with dyes weighing 80 pounds. Both jobs were classified as heavy lifting occupations. In June of 1981 the plaintiff suffered a work-related injury to his low back. He was examined by Dr. George Stevens, an orthopedic surgeon, who diagnosed degenerative disc disease and a ruptured disc on the right side of his back, and assessed a 15 percent permanent partial anatomical disability to the body as a whole. The plaintiff and defendant agreed to a court-approved worker's compensation settlement based on a 15 percent permanent vocational disability. The plaintiff was not represented by counsel.

After the injury, the plaintiff returned to the same heavy lifting job and performed it without difficulty until the fall of 1985. In November of 1985, because of another episode of back pain, he was disqualified from the fin machine job and shifted to a lighter job as a punch press operator. Occasionally, he was assigned the heavier work of a punch press set-up man. On October 15, 1986, the plaintiff was shoveling scrap metal slugs from the floor into a hopper on the punch press when he pulled something on the left side of his back. He had immediate symptoms of left leg numbness and pain in the lower left side of his back, and was treated by a general practitioner, Dr. Henry Hedden. His employer paid him temporary total disability benefits, and returned him to a light duty job after three months off from work.

The plaintiff continued to have episodes of severe pain, missed work sporadically, and finally saw Dr. Stevens again in 1988, who determined the plaintiff had a ruptured disc on the left side, observed he had suffered permanent impairment as a result, and stated there was no longer any evidence of the 1981 ruptured disc on the right side. Anatomical disability was assessed at 10–15 percent to the body as a whole. When Dr. Stevens was asked what difference he observed in impairment between his findings in 1982 and 1988, he answered, "the end result is basically the same," and that he would advise the patient to observe the same restrictions. He also expressed the opinion that the history of the 1986 injury and symptoms reported by the plaintiff were consistent with an incident that could cause a ruptured disc, but he was unable to say with a reasonable degree of medical certainty that the 1986 event had caused the ruptured disc. He thought the plaintiff should perform only light duty, bench-type work with restricted bending, climbing, and lifting only 25 to 35 pounds.

Dr. John Bell, an orthopedic surgeon, examined the plaintiff on one occasion in 1988, diagnosed his problem as chronic lumbar strain and degenerative disc disease, assessed a 5 percent permanent partial disability to the body as a whole, and said the disability was caused by the October 1986 injury which had aggravated the pre-existing disc disease. Dr. Bell felt the plaintiff should perform only light to light-medium type work, should avoid frequent bending, twisting and climbing, and should not lift more than 35 pounds.

The trial court found the plaintiff had suffered a 45 percent permanent vocational disability to the body as a whole as a result of the 1986 back injury. The defendant appeals.

■ Our review of findings of fact by the trial court is de novo upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e); *Lollar v. Wal–Mart Stores, Inc.,* 767 S.W.2d 143 (Tenn.1989). Permanency of an injury in worker's compensation cases must be established by expert medical testimony. *Blalock v. Williams,* 483 S.W.2d 578 (Tenn. 1972); *Floyd v. Tennessee Dickel Distilling Co.,* 225 Tenn. 65, 463 S.W.2d 684 (1971).

■ The defendant argues that the evidence does not support an award for permanent partial disability because the anatomical disability and restrictions did not change after the 1986 injury. However, Dr. Stevens clearly testified the 1986 ruptured disc was a new finding involving a

different disc than the 1981 injury, and that the injury caused permanent impairment. It is true that he finds the resulting percentage of permanent disability the same as he assessed for the 1981 injury. However, "when medical evidence establishes permanency, the failure of a medical expert to attribute a percentage of *anatomical* disability [does not] justify a denial of compensation if the other evidence demonstrates that an award of benefits is appropriate." *Corcoran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452, 457 (Tenn.1988) (emphasis added). Likewise, Dr. Stevens' failure to assess an additional anatomical disability does not, standing alone, justify a denial of compensation where there is other evidence supporting an award.

■ Dr. Stevens testified there was no longer any evidence of the 1981 ruptured disc on the right side. In addition, lay testimony established the plaintiff returned to the same heavy lifting job after the 1981 injury, performed it without difficulty until 1985, and engaged in normal physical activity until the 1986 injury. After the 1986 injury, the lay proof demonstrates the plaintiff's activities were substantially restricted. He could no longer lift, mow the yard, work on cars, or work around the house. At the time of trial, plaintiff was assigned a light duty job with virtually no lifting at a reduced salary.

From the testimony of Drs. Stevens and Bell, we conclude that the plaintiff's impairment is permanent, and results from the injury to plaintiff's back in the 1986 accident.

The defendant also argues there is no competent proof of vocational disability because the vocational expert's opinion was based on an erroneous assumption that the plaintiff had no work restrictions prior to the 1986 injury. Dr. Julian Nadolsky, the vocational expert, testified the plaintiff was disabled from 67 percent of the jobs available in the local labor market because of the 1986 injury. When informed that the plaintiff had been restricted to lighter duty work prior to the second injury, Dr. Nadolsky testified, if Worthington "was not capable of any more physical exertion in 1985

than he was in 1986 or 1987, then it would mean his injury or his vocational limitation would date back to 1985." However, the proof shows that although the plaintiff was shifted to a lighter job in 1985, he was in fact capable of doing heavier work, was occasionally assigned such job duties, and on the occasion of his 1986 injury was doing heavy work. He testified that before the 1986 injury, he could lift up to 100 pounds, mow the yard, work on automobiles, and work around the house. Defense counsel's exchange with Dr. Nadolsky follows:

Q. But you have not reduced the sixty-seven percent figure based upon a prior award of fifteen percent, have you?

A. No, I haven't, because he demonstrated the capability of performing a heavy job over a four year period of time following his return to work after the injury in 1981.

■ Nor does the extent of vocational disability depend upon either a medical or vocational expert. The extent of vocational disability "does not definitively depend on the medical proof regarding a percentage of anatomical disability." Instead, "the extent of a vocational disability is a question of fact for the trial court to determine from all the evidence, including lay and expert testimony...." *Corcoran* at 457, 458. There is no requirement that the trial court fix permanent partial disability solely with reference to expert testimony. Further, the trial court must determine the extent of unscheduled vocational disability by considering many factors, including job skills, education, age, training, duration of disabilities, anatomical disabilities established by medical experts, and local job opportunities for the disabled. *See Holder v. Wilson Sporting Goods Co.*, 723 S.W.2d 104, 107 (Tenn.1987); *Roberson v. Loretto Casket Co.*, 722 S.W.2d 380, 384 (Tenn.1986).

■ Here, the undisputed proof shows the plaintiff is 51 years old and has a ninth grade education and no vocational training. His primary work experience is limited to jobs requiring heavy physical exertion, and he is disqualified from 67 percent of the jobs in the local area which he had been

capable of performing before his 1986 injury.

Based on the foregoing, we conclude the evidence does not preponderate against the trial court's award of 45 percent vocational disability attributable to the 1986 injury. The judgment of the trial court is affirmed. Costs of this appeal are taxed to the Appellants.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ.