Roy COX, Jr., Plaintiff–Appellant,

v.

MARTIN MARIETTA ENERGY SYSTEMS, Defendant–Appellee,

and

Sue Ann Head, Tennessee Department of Labor, Second Injury Fund, Defendant–Appellant.

Supreme Court of Tennessee, at Knoxville.

May 4, 1992.

Bruce D. Fox, Ridenour & Ridenour, Clinton, for plaintiff-appellant.

Robert N. Stivers, Jr., Asst. Gen. Counsel, Oak Ridge, for defendant-appellee Martin Marietta Energy Systems.

Charles W. Burson, Atty. Gen. & Reporter, Dianne Stamey Dycus, Asst. Atty. Gen., Nashville, for defendant-appellant Second Injury Fund.

OPINION

DROWOTA, Justice.

Two issues have been raised on this appeal, one factual and one legal. The factu-

al issue arises from employee Roy Cox, Jr.'s, Plaintiff–Appellant, averment that the percent of permanent disability awarded by the trial court is too low. The Tennessee Department of Labor, Second Injury Fund (the Fund), Defendant–Appellant, avers that the trial court erred in the apportionment of disability benefits between the employer and the Fund. This legal issue requires an interpretation of T.C.A. § 50-6-208(b) to ascertain whether the statutory language "workers' compensation award or awards" would include a Veteran's Administration disability award.

## THE FACTS

Plaintiff was 44 years old at the time of trial. He began work for Union Carbide Corporation, predecessor to his present employer Martin Marietta Energy Systems (Martin Marietta), on May 5, 1969. He has worked as a machinist at the Y–12 plant since 1969. Before Plaintiff went to work for Defendant, he was in the military. In July 1979, as a reservist with the U.S. Army, he injured his back while loading trucks at Ft. Hood, Texas. This injury resulted in a finding of a 20 percent service-related disability to the body as a whole by the Veteran's Administration in September 1987.

Plaintiff again injured his back in 1988, while in the course and scope of his employment with Martin Marietta. Because of this injury, Plaintiff had a disk treated at lumbar 3–4, and a decompressive laminectomy. That injury resulted in a court-approved workers' compensation award of 65 percent permanent disability to the body as a whole.

On January 8, 1990, Plaintiff again injured his back within the course and scope of his employment. Plaintiff underwent a tercutaneous discectomy on May 24, 1990. Dr. Steven Natelson testified that this was a new injury, rupture of a disk between lumbar 4–5, which resulted in an additional impairment of five percent to the body as a whole. He stated that "Plaintiff was carrying a physical impairment prior to January of 1990, of 15 percent to the person as a whole, and after this latest procedure he now carries an impairment of 20 percent." Dr. Natelson last saw Plaintiff on July 16, 1990, at which time Plaintiff reported that he was feeling better and had returned to work. Plaintiff works eight hours per day, five days per week; however he receives assistance in setting his machines and loading parts.

Plaintiff testified that he has trouble walking and cannot sit for more than 10 or 15 minutes at a time. He stated he is unable to do yard work and occasionally needs assistance in getting dressed.

Plaintiff received an Associate Degree in Business Administration and an Associate Degree in Accounting from Knoxville Business College. He also received a B.S. degree in Accounting from the Cooper Institute in Knoxville. Plaintiff testified that he never worked in accounting or business administration.

Plaintiff's proof consisted of his testimony, that of his wife, the deposition of Dr. Natelson, and the testimony of Gerald Gulley, a vocational career placement counsel coordinator with the Anderson County Schools. Mr. Gulley additionally works as a self-employed consultant doing vocational assessments. Mr. Gulley saw Plaintiff on November 14, 1990, for the purpose of performing a vocational analysis. Mr. Gulley was of the opinion that Plaintiff was now disabled for 100 percent of the jobs that are available in the local labor market.

## FINDINGS OF THE TRIAL COURT

The trial court, after reciting Plaintiff's prior injuries in 1979, for which he received a disability rating of 20 percent, and 1988, for which he received an award of 65 percent, found "that the Plaintiff has suffered an additional 40 percent permanent disability to the body as a whole." The court apportioned that disability award as follows: 25 percent to the Second Injury Fund and 15 percent to the employer, Martin Marietta. Plaintiff appeals the amount of the award; the Second Injury Fund appeals the apportionment of the award.

OUR FINDINGS AND CONCLUSIONS

We must first determine whether the trial court's award of 40 percent disability to the body as a whole was proper, and then determine how the award should be apportioned between the employer and the Second Injury Fund. Our standard of review of the findings of the trial court is *de novo* with a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. T.C.A. § 50–6–225(e) (1991).

I.

Plaintiff asserts that the trial court erred in allowing only an additional 40 percent disability to the body as a whole, and that the award should be increased. Plaintiff avers that he received a 65 percent permanent disability award for his 1988 injury to his back, specifically lumbar 3–4. He asserts the 1990 injury was similar to the 1988 injury, except that it was the lumbar 4–5, yet he received an award of only 40 percent. This he contends is inadequate. The Defendants point out, however, that Dr. Natelson testified that the 1990 injury resulted in a five percent impairment to the body as a whole and that prior to this injury Plaintiff had a 15 percent impairment to the body as a whole. Thus the employer contends that, if Plaintiff received 65 percent disability based on a 15 percent impairment rating, then the employee should receive proportionately less (approximately 21 percent) based on a five percent impairment rating.

The extent of an injured worker's permanent disability is an issue of fact. *Jaske v. Murray Ohio Mfg. Co., Inc.*, 750 S.W.2d 150 (Tenn.1988). In determining the extent of the worker's disability, the trial judge is not required to accept without reservation an expert's opinion, be he a doctor or vocational consultant, but is charged with making an independent determination on consideration of such factors as age, education, training, job skills, work experience, and job opportunities available to a worker with the anatomical disability of the plaintiff. *See Bradford v. Travelers Indemnity Co.*, 762 S.W.2d 572 (Tenn.

1988). On considering the evidence under our *de novo* standard of review, we cannot say that the evidence preponderates against the trial judge's finding that the 1990 injury caused Plaintiff a permanent partial disability of 40 percent to the body as a whole.

II.

The Second Injury Fund alleges that the trial court erred in apportioning Plaintiff's 40 percent disability between the Fund and the employer. The trial court added Plaintiff's 1979 20 percent Veteran's Administration disability award, his 1988 65 percent workers' compensation disability award, and his 40 percent disability award from the present 1990 injury, to reach a total of 125 percent. The court then found that under T.C.A. § 50–6–208(b) the amount in excess of 100 percent is to be paid by the Second Injury Fund, thus rendering the Fund liable for 25 percent of Plaintiff's present disability and the employer, Martin Marietta, liable for the remaining 15 percent, for a total of 40 percent.

In *Minton v. State Industries, Inc.*, 825 S.W.2d 73 (Tenn.1992), (citing *Lock v. Nat. Union Fire Ins. Co. of Pa.*, 809 S.W.2d 483 (1991)), we observed that the Second Injury Fund statute, T.C.A. § 50–6–208, provides that an injured employee may be eligible for benefits from the Fund in one of two ways. First, if an injured employee has previously sustained a permanent physical disability from any cause or origin and becomes permanently and totally disabled through a subsequent injury, the employer is liable only for the disability that would have resulted from the subsequent injury without consideration of the first. The Second Injury Fund thus pays the difference between the amount received by the injured employee from the employer for the subsequent injury, and the amount to which he would be entitled in order to be compensated for his total disability. T.C.A. § 50–6–208(a). Second, if an injured employee has received a prior workers' compensation award or awards for permanent disability to the body as a whole and the combination of such awards equals or ex-

ceeds 100 percent permanent disability to the body as a whole, then the Second Injury Fund will pay benefits due to the injured employee in excess of 100 percent. T.C.A. § 50–6–208(b). *See Burris v. Cross Mountain Coal Co.,* 798 S.W.2d 746 (Tenn.1990); *Sims v. Bituminous Cas. Corp.,* 798 S.W.2d 751 (Tenn.1990).

Having concurred with the trial court's finding that Plaintiff's 1990 injury resulted in a 40 percent permanent disability to the body as a whole, we find that subsection (a) does not apply because Plaintiff is not "permanently and totally disabled through a subsequent injury." T.C.A. § 50–6–208(a). However, subsection (b) does apply because there has been a prior workers' compensation award for permanent disability to the body as a whole and the combination of the awards equals or exceeds 100 percent permanent disability to the body as a whole. *Burris,* 798 S.W.2d at 750 (Tenn. 1990); *Sims,* 798 S.W.2d at 753–54 (Tenn. 1990).

■ The Fund argues that by its terms, subsection (b) applies only to prior "workers' compensation award or awards" for permanent disability to the body as a whole, and workers' compensation settlements which have not been judicially approved are not to be considered in calculating the liability of the Second Injury Fund under T.C.A. § 50–6–208(b)(1). The Fund avers that the combination of the court approved 1988 injury (65 percent) and the 1990 injury (40 percent) "equals or exceeds 100 percent permanent disability to the body as a whole." Because the combination of these two awards totals 105 percent, the Fund would therefore be responsible for paying benefits due the injured employee in excess of 100 percent. Under the Fund's theory, it would be responsible for 5 percent and the employer responsible for 35 percent, a total of 40 percent.

The employer avers that the combination of the 1979 disability award given by the Veteran's Administration of 20 percent, with the 1988 (65 percent) and 1990 (40 percent) awards, gives a combined total of 125 percent. The employer thus asserts that the Fund is responsible for the bene-

fits in excess of 100 percent, namely 25 percent, and that it is liable for 15 percent. The trial court adopted this rationale in apportioning the liability 25 percent to the Fund and 15 percent to the employer.

It can thus be seen that the only difference in the two approaches shown above involves the use or nonuse of the 1979 20 percent Veteran's Administration award. The dispute is solely between the Fund and the employer; the employee, Roy Cox, takes no position as to which Defendant is responsible for the 20 percent. The Fund argues that the Veteran's Administration award was not judicially approved and cannot be considered in calculating the liability of the Fund under T.C.A. § 50–6–208(b)(1), citing *Hale v. CNA Ins. Co.,* 799 S.W.2d 659, 662 (Tenn.1990).

The employer, citing *Burris v. Cross Mountain Coal Co.,* 798 S.W.2d 746, 749 (Tenn.1990), points out that the basic purpose of the Second Injury Fund is to encourage the employment of persons with permanent physical disabilities and handicaps by limiting, to some extent, the employer's workers' compensation liability. The employer asserts that the position advanced by the Second Injury Fund is in direct conflict with this purpose.

The pivotal issue, which has not been previously addressed by this Court, is whether subsection (b) applies literally only to "workers' compensation award or awards" or whether the statutory language also encompasses other entity's, such as the United States government's or T.V.A.'s, award of benefits to an injured employee.

In *Burris v. Cross Mountain Coal Co., supra,* the employee received a judicially approved settlement for 30 percent permanent disability to the body as a whole, resulting from a 1986 back injury. The employee injured his back a second time in 1988 and the trial court determined that he was totally and permanently disabled. The argument was advanced by the employer that the trial court in the second proceeding was not bound by the prior judicially approved settlement regarding the extent of disability of the prior injury for the

**538**

purposes of apportionment under subsection (b). We responded to this argument by stating: "Were we to adopt such a rule, the extent of disability resulting from prior injuries would invariably be relitigated in subsequent proceedings. Concerns for judicial economy and finality of settlements in this context persuade us not to follow this approach." 798 S.W.2d at 750. We held that a prior award that had been judicially approved could not be relitigated in a subsequent proceeding.

A somewhat similar argument was advanced in *Hale v. CNA Ins. Co.*, 799 S.W.2d 659 (Tenn.1990), where the employee, who was employed by his mother-in-law, settled his 1972 back injury for 10 percent. Hale was not represented by counsel and the settlement was not judicially approved. Hale had three subsequent injuries, the last resulting in 100 percent total disability. In apportioning the award between the employer and the Second Injury Fund, the employer asserted that all workers' compensation awards and settlements, court approved or otherwise, should be considered for purposes of apportionment under subsection 208(b). The dispute was between the Fund and the employer on how to calculate the unapproved award of 10 percent. In *Hale* we considered the language "workers' compensation awards" and equated it "with workers' compensation settlements that have been judicially approved...." 799 S.W.2d at 662. We stated that unapproved awards are to be considered under subsection 208(a)'s language "disability from any cause or origin." In *Hale* the employee could not proceed under subsection (a) because of his failure to meet the "knowledge" to the employer requirement. In *Hale* we held: "prior awards must be court approved before such awards may be considered in determining the respective liability of the employer and the Second Injury Fund under subsection (b)." 799 S.W.2d at 662. The reasoning behind our decision was that

awards under subsection (b) should not be relitigated.

The employer is asking this Court to read into "workers' compensation award or awards," found in subsection 208(b), Veteran Administration awards. A Veteran's Administration award is specifically covered under subsection 208(a) "any cause or origin." [1] We are unwilling to expand the clear meaning of the phrase "workers' compensation award" to include a Veteran Administration award. We are also unsure of the finality of settlements and awards from "other entities." We feel that any expansion to cover other such entities should be left to the legislature.

We find the trial court erred in considering Plaintiff's Veteran's Administration disability benefits in determining the liability of the Second Injury Fund pursuant to T.C.A. § 50–6–208(b). The employer, Martin Marietta, is accordingly liable for 35 percent and the Second Injury Fund liable for 5 percent of the employee's award. The costs of this appeal are taxed to the employer, Martin Marietta.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.

---

1. Had Plaintiff been "totally (100 percent) disabled through a subsequent injury," then the 20 percent veteran's administration award would have been considered in calculating the liability of the Fund under subsection 208(a) because the Veteran's Administration award meets the statutory language of "sustained a permanent physical disability from any cause or origin," and the employer had actual knowledge of the disability. However, Plaintiff was not totally disabled and any recovery from the Fund must necessarily come under subsection 208(b).