Bobby Joe BROWN, Plaintiff–Appellee,

v.

BITUMINOUS INSURANCE
COMPANY, Defendant–
Appellee,

and

Sue Ann Head, Director, Division of
Workers' Compensation, Tennessee
Department of Labor, Second Injury
Fund, Defendant–Appellant.

Supreme Court of Tennessee,
Special Workers' Compensation
Appeals Panel.

Jan. 26, 1995.

Charles W. Burson, Atty. Gen. and Reporter, Diane Stamey Dycus, Senior Counsel, Nashville, for appellant.

James M. Moore, Moore and Smith, Crossville, for Bobby Joe Brown.

Joe M. Looney, Looney and Looney, Crossville, for Bituminous Insurance Company.

### JUDGMENT ORDER

PER CURIAM.

This case is before the Court upon motion for review pursuant to Tenn.Code Ann. § 50–6–225(e)/(5)(B), the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law, which are incorporated herein by reference;

Whereupon, it appears to the Court that the motion for review is not well-taken and should be denied; and

It is, therefore, ordered that the Panel's findings of fact and conclusions of law are adopted and affirmed, and the decision of the Panel is made the judgment of the Court. The Panel's opinion shall be published.

Costs will be paid by defendant-appellee, for which execution may issue if necessary.

IT IS SO ORDERED.

Members of Panel: FRANK F. DROWOTA, III, Associate Justice, JOHN K. BYERS, Senior Judge, JOE C. LOSER, JR., Retired Judge.

## MEMORANDUM OPINION

This workers' compensation appeal has been referred to the Special Workers' Compensation Appeals Panel of the Supreme Court in accordance with T.C.A. § 50–6–225(e)(3) for hearing and reporting to the Supreme Court of findings of fact and conclusions of law. In this appeal, the Second Injury Fund (the fund) questions the trial court's finding that the claimant, Bobby Joe Brown, is permanently and totally disabled and the apportionment of benefits at 80 percent to the fund and 20 percent to the employer's insurer, Bituminous Insurance Company. The Panel finds that the judgment of the trial court should be affirmed as modified herein.

The claimant was 40 years old at the time of the trial. He has a ninth grade education and GED. He has worked as a laborer and construction supervisor. Currently, Mr. Brown is studying drafting at Crossville Vocational School in an effort to become rehabilitated.

The claimant has had four on-the-job injuries, including the one which is the basis for this litigation. The first one occurred in 1979 while he was working for Southern Railway. His claim for damages under the Federal Employers Liability Act was compromised and settled. A medical doctor estimated his impairment from that injury at 20 percent to the whole body. That settlement was not court approved. The claimant testified that he was totally disabled from returning to the railroad job but that over time he rehabilitated himself and began working in construction in 1981, as a laborer.

In January, 1982, Mr. Brown injured his shoulder. He received a workers' compensation award based on a 7.72 percent permanent partial disability to the body as a whole. He returned to work. In May, 1988, Mr. Brown injured his back, which injury resulted in a workers' compensation award based on 40 percent permanent partial disability to the body as a whole. Both awards were as provided by the Tennessee Workers' Compensation Law (the Act).

Following the third injury, the claimant accepted employment with Maffett Construction Company. The fund apparently does not dispute that Maffett knew of the claimant's permanent and preexisting disability at the time it hired him. In May, 1990, he again suffered a back injury by accident arising out of and in the course of his employment with Maffett, which injury is the subject of this litigation. Since this injury, Mr. Brown has not been able to work. Dr. John Purvis estimated his permanent impairment from this injury at 15 percent to the whole body. The claimant is unable to work at any job involving physical labor or which would require him to sit or stand for long periods of time.

Upon the above summarized evidence, the chancellor found the claimant to be permanently and totally disabled. He then apportioned the award for permanent total disability benefits under the Act 80 percent to the fund and 20 percent to the employer's insurer, Bituminous Insurance Company. Appellate review is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings of fact, unless the preponderance is otherwise. T.C.A. § 50–

6–225(e)(3). Conclusions of law are subject to *de novo* review without any presumption of correctness. *See Presley v. Bennett,* 860 S.W.2d 857 (Tenn.1993).

■ When an injury, not otherwise specifically provided for in the Act, totally incapacitates a covered employee from working at an occupation which brings him an income, such employee is considered totally disabled. T.C.A. § 50–6–225(e)(2); *See Prost v. City of Clarksville,* 688 S.W.2d 425 (Tenn.1985). Once causation and permanence have been established by expert medical testimony, as here, the trial judge may consider many pertinent factors, including job skills, education, training, duration of disability and job opportunities for the disabled, for the purpose of evaluating the extent of a claimant's permanent disability. *See Worthington v. Modine Mfg. Co.,* 798 S.W.2d 232 (Tenn.1990). The opinion of a qualified expert with respect to a claimant's clinical or physical impairment is a factor which the court will consider along with all other relevant factors and circumstances, but it is for the court to determine the percentage of the claimant's industrial disability. *Id.* The Panel finds that the evidence fails to preponderate against the chancellor's finding that the claimant is permanently and totally, or 100 percent, disabled.

■ One of the purposes of the Act is to place upon industry rather than society, the ultimate cost of risks incident to, and injuries and death resulting from, the production and distribution of goods and services. *See Franklin v. Stone and Webster Engineering,* 191 S.W.2d 431, 183 Tenn. 155 (1946). Nevertheless, to encourage employers to hire and retain handicapped persons, the General Assembly had established, by T.C.A. § 50–6–208, the Second Injury Fund, which relieves the employer, who knowingly hires a handicapped person or retains an employee after discovering the employee has a physical disability, of some of the cost by shifting part of the liability for the payments to the fund. That section provides, in pertinent part, as follows:

50–6–208. **Subsequent permanent injury after sustaining previous permanent injury.**—"Second injury fund."—(a)(1) If an employee has previously sustained a permanent physical disability from any cause or origin and becomes permanently and totally disabled through a subsequent injury, such employee shall be entitled to compensation from such employee's employer or the employer's insurance company only for the disability that would have resulted from the subsequent injury, and such previous injury shall not be considered in estimating the compensation to which such employee may be entitled under this chapter from the employer or the employer's insurance company; provided, that in addition to such compensation for a subsequent injury, and after completion of the payments therefor, then such employee shall be paid the remainder of the compensation that would be due for the permanent total disability out of a special fund to be known as the "second injury fund" therein created.

(2) To receive benefits from the second injury fund, the injured employee must be the employee of an employer who has properly insured such employer's workers' compensation liability or who has qualified to operate under the Workers' Compensation Law as a self-insurer, and the employer must establish that the employer had actual knowledge of the permanent and preexisting disability at the time that the employee was hired or at the time that the employee was retained in employment after the employer acquired such knowledge,

but in all cases prior to the subsequent injury.

(3) Nothing in this section shall be construed to limit the employer's liability as provided by law for aggravation of preexisting conditions or disabilities in cases where recovery against the second injury fund is not applicable.

(b)(1)(A) In cases where the injured employee has received or will receive a workers' compensation award or awards for permanent disability to the body as a whole, and the combination of such awards equals or exceeds one hundred percent (100%) permanent disability to the body as a whole, the employee shall not be entitled to receive from the employer or its insurance carrier any compensation for permanent disability to the body as a whole that would be in excess of one hundred percent (100%) permanent disability to the body as a whole, after combining awards.

(B) Benefits which may be due the employee for permanent disability to the body as a whole in excess of one hundred percent (100%) permanent disability to the body as a whole, after combining awards, shall be paid by the second injury fund.

(C) It is the intention of the general assembly that once an employee receives an award or awards for permanent disability to the body as a whole, and such awards total one hundred percent (100%) permanent disability, any permanent disability compensation due for subsequent compensable injuries to the body as a whole shall be paid by the second injury fund, instead of by the employer.

■ Since this claimant has now received workers' compensation "awards for permanent disability to the body as a whole, and the combination of such awards equals or exceeds one hundred percent

(100%) permanent disability to the body as a whole," his claim is covered by subsection (b) and he is not entitled to recover from his employer or its insurance carrier "any compensation for permanent disability to the body as a whole that would be in excess of one hundred percent (100%) permanent disability to the body as a whole, after combining awards." The combination of awards of benefits under the Tennessee Workers' Compensation Law is 147.72 percent. The question which must now be resolved is whether the settlement of the previous FELA claim against Southern Railway should be considered an "award" under subsection (b), thus further reducing the liability of the employer's insurer. We think not.

■ It has previously been held that an award from the Veterans Administration does not constitute a "workers' compensation award" under T.C.A. § 50–6–208(b). *See Cox v. Martin Marietta Energy Systems*, 832 S.W.2d 534 (Tenn.1992). It has previously been held further that an unapproved recovery of workers' compensation benefits did not constitute a "workers' compensation award" under the same section. We now hold that the term applies only to awards made or approved by a *court of competent jurisdiction* under the Workers' Compensation Law of Tennessee and does not apply, therefore, to an award received in settlement of a claim under the Federal Employers' Liability Act. We further hold that, even where there may be a previous permanent and preexisting disability from some other cause or origin, subsection (b) not (a) is applicable where there has been a subsequent previous workers' compensation award and the combination of such awards equals or exceeds 100 percent. To the extent that prior decisions may be interpreted as conflicting with this rule, they are overturned. We are not persuaded,

however, that such a conflict exists in any prior decision.

█ Bituminous Insurance Company's liability in this case is therefore limited to benefits based on the difference between 100 percent and 47.72 percent, or 52.28 percent, to the body as a whole. The remaining benefits, based on 47.72 percent to the body as a whole, are the responsibility of the fund. The judgment of the trial court is modified accordingly.

As modified, the judgment of the trial court is affirmed and the case is remanded to the trial court for such further proceedings as may be necessary. Costs on appeal are taxed to the defendant-appellee.

FRANF F. DROWOTA, Associate Justice, JOHN K. BYERS, Senior Judge, concur.