Sammie Wanda SCOTT,
Plaintiff–Appellee,

v.

OSHKOSH B'GOSH, INC.,
Defendant–Appellee,

Sue Ann Head, Director, Division of Workers' Compensation, Tennessee Department of Labor, Second Injury Fund, Defendant–Appellant.

Supreme Court of Tennessee,
Special Workers' Compensation
Appeals Panel,
at Nashville.

Jan. 26, 1995.

Charles M. Burson, Attorney General and Reporter, Diane Stamey Dycus, Senior Counsel, Nashville, for Appellant.

Donna Simpson Massa, L. Dean Moore, Cookeville, for Appellees.

## JUDGMENT ORDER

### PER CURIAM.

This case is before the Court upon motion for review pursuant to Tenn.Code Ann. § 50–6–225(e)(5)(B), the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law, which are incorporated herein by reference;

Whereupon, it appears to the Court that the motion for review is not well-taken and should be denied; and

It is, therefore, ordered that the Panel's findings of fact and conclusions of law are adopted and affirmed, and the decision of the Panel is made the judgment of the Court. The Panel's opinion shall be published.

Costs will be paid by defendant-appellee, for which execution may issue if necessary.

IT IS SO ORDERED this 26th day of January, 1995.

Members of Panel: FRANK F. DROWOTA, III, Associate Justice, JOHN K. BYERS, Senior Judge, JOE C. LOSER, Jr., Retired Judge.

## MEMORANDUM OPINION

This workers' compensation appeal has been referred to the Special Workers' Compensation Appeals Panel of the Supreme Court in accordance with T.C.A. § 50–6–225(e)(3) for hearing and reporting to the Supreme Court of findings of fact and conclusions of law. In this appeal, The Second Injury Fund (the fund) questions the trial court's allocation of permanent partial disability benefits between it and the employer, Oshkosh B'Gosh (Oshkosh). The Panel finds that the judgment should be modified.

The employee or claimant, Sammie Wanda Scott, a resident of Kentucky, commenced this civil action by filing a complaint demanding disability and medical benefits, as provided by the Tennessee Workers' Compensation Act (the Act), from the employer for an injury alleged to have occurred when she fell at work on December 19, 1990, at the employer's plant in Celina. By its answer the employer admitted knowledge of the injury at work but denied all other material allegations. A consent order between counsel for the claimant and counsel for the employer was approved by the trial judge permitting the claimant to add the fund as an additional defendant. The amended complaint alleged, among other things, that the employer had knowledge of a prior disability, thereby invoking T.C.A. § 50–6–208, which provided in pertinent part at the time of the injury, as follows:

**50-6-208. Subsequent permanent injury after sustaining previous permanent injury—"Second injury fund."**—(a)(1) If an employee has previously sustained a permanent physical disability from any cause or origin and becomes permanently and totally disabled through a subsequent injury, such employee shall be entitled to compensation from such employee's employer or the employer's insurance company only for the disability that would have resulted from the subsequent injury, and such previous injury shall not be considered in estimating the compensation to which such employee may be entitled under this chapter from the employer or the employer's insurance company; provided, that in addition to such compensation for a subsequent injury, and after completion of the payments therefor, then such employee shall be paid the remainder of the compensation that would be due for the permanent total disability out of a special fund to be known as the "second injury fund" therein created.

(2) To receive benefits from the second injury fund, the injured employee must be the employee of an employer who has properly insured such employer's workers' compensation liability or has qualified to operate under the Workers' Compensation Law as a self-insurer, and the employer must establish that the employer had actual knowledge of the permanent and preexisting disability at the time that the employee was hired or at the time that the employee was retained in employment after the employer acquired such knowledge, but in all cases prior to the subsequent injury.

(3) In determining the percentage of disability for which the second injury fund shall be liable, no previous physical impairment shall be considered unless such impairment was within the knowledge of the employer as prescribed above.

(4) Nothing in this section shall be construed to limit the employer's liability as provided by law for aggravation of preexisting conditions or disabilities in cases where recovery against the second injury fund is not applicable.

(b)(1)(A) In cases where the injured employee has received or will receive a workers' compensation award or awards for permanent disability to the body as a whole, and the combination of such awards equals or exceeds one hundred percent (100%) permanent disability to the body as a whole, the employee shall not be entitled to receive from the employer or its insurance carrier any compensation for permanent disability to the body as a whole that would be in excess of one hundred percent (100%) to the body as a whole, after combining awards.

(B) Benefits which may be due the employee for permanent disability to the body as a whole in excess of one hundred percent (100%) permanent disability to the body as a whole, after combining awards, shall be paid by the second injury fund.

(C) It is the intention of the general assembly that once an employee receives an award or awards for permanent disability to the body as a whole, and such awards total one hundred percent (100%) permanent disability, any permanent disability compensation due for subsequent compensable injuries to the body as a whole shall be paid by the second injury fund, instead of by the employer.

The claimant is 42 years old with an eighth grade education and no vocational training. She has worked at Oshkosh since 1973 as, at various times, a machine operator, utility operator and supervisor.

In November, 1983, she accidentally injured her back in the course of her employment, for which she received medical and temporary total disability benefits as provided by the Act, but no permanent disability benefits. The evidence that she was permanently disabled and that the employer had actual knowledge of such disability is, at best, suspect. Mary Ann Overstreet, an employee of Oshkosh, testified concerning special accommodations that were provided for the claimant following the 1983 injury, but did not testify that she had knowledge that the claimant was permanently disabled from that event. No permanent disability benefits were paid and there is nothing in the record that would have put the employer on notice of such permanency until the deposition of Dr. Arthur Gernt Bond was taken in 1993. Moreover, the Panel is not impelled to indulge a presumption that the employer knew that the claimant had a permanent disability, but disregarded its legal obligation to pay benefits.

Following that injury, the claimant was referred to Dr. Robert Mauricio who treated her conservatively without success, then referred her to Dr. Vaughan Allen, a neurosurgeon, who first saw her on January 17, 1984, and later performed corrective surgery, before releasing the claimant to return to work. There is no evidence that Dr. Mauricio, who testified by deposition, ever informed the employer that the employee's disability following the 1983 injury was permanent. Dr. Vaughan did not testify but his office notes, which were introduced, included the following:

*IMPRESSION:* Lumbar radiculopathy, possibly secondary to disc. · I would like to admit her for further evaluation.

1-29-84   Admit Memorial Hospital

2-01-84   Lumbar laminectomy

2-07-84   Discharged

She had a large 4–5 disc which was removed without difficulty. Postoperatively she has done quite well. She will return to the office in about one month....

3/6/84 OV: She is doing well. She still has a mild amount of leg pain, but she has a negative straight leg raising examination. Dorsiflexion function is nearly back to normal. The wound has healed well. She will return in two months. I have given her instructions on increasing her activities.

5/8/84 OV: She is doing reasonably well. She still has mechanical pain when she does any significant lifting. Overall, however, she is coming along well. She is doing a lot of walking; I have asked her to continue this. She can return to work with a 15 lb. weight limitation if her employer will accept that. I will see her on a PRN basis.

5/8/84: COPY OF LAST OFFICE NOTE TO WC

9/4/84 OV: 2 weeks ago she slipped and fell at work, landing on her buttocks on her left side. She is neurologically unchanged. She is having some leg pain which predated the fall. Her exam is unchanged. She can return to work with a 30 lb. weight limitation. I will see her on a PRN basis.

Ms. Scott was allowed to return to work with her weight limitations and given accommodations, but she did not claim any permanent disability benefits and they were not offered to her. She worked regularly and continuously, with some absences, until a second injurious occurrence.

In 1986 the claimant again fell at work and was injured. She was again referred to Dr. Allen, who made the following pertinent entries:

02–04–86   Admission Nashville Memorial Hospital.

She had no problems after her previous laminectomy but she was recently injured while lifting at work. She now has intractable leg pain....

She was treated conservatively for the second injury and received an impairment rating of 10 percent to the body from Dr. Warren McPherson. She was awarded permanent disability benefits as provided by the Act based on 10 percent permanent partial disability to the body as a whole. That settlement was approved by the Honorable Bobby Capers. Judge Capers did not find that the claimant was receiving substantially the benefits to which she was entitled by law but approved the award as being in the claimant's best interest, as permitted by the Act. *See* T.C.A. § 50-6-206. The claimant did not have the benefit of counsel following the 1983 injury or the 1986 injury. She returned to work at Oshkosh.

In December, 1990, the claimant again slipped and fell at work, injuring her back and prompting this litigation. She was referred to Dr. Bond, who performed a laminectomy at a lower part of her back than the previous surgery and whose testimony on August 23, 1993, when he saw Dr. Allen's notes for the first time, included the following:

Q. Now, Dr. Bond, if you would, tell the court when you first had occasion to see Sammie Wanda Scott.

A. I first examined Sammie Wanda Scott on January the twenty-eighth of 1992, and that examination was performed in my office.

\* \* \* \* \* \*

A. .... Miss Scott would have an eight percent permanent partial impairment secondary to her operative procedure according to the most recent edition of the AMA Guide to Permanent Impairment.

Q. Dr. Bond, could you say based on a reasonable degree of medical certainty that the injury that she complained of and what you found were related to the accident that she described to you.

A. Well, it's an aggravation of a preexisting condition. This patient has had previous problems with her back in that she had a disc herniation at L4-5, which was described by Dr. Allen in the notes that you have supplied me—to me as being a large disc herniation at that level....

Dr. Julian Nadolsky, a vocational expert, opined at trial that the claimant was 60-65 percent disabled from the 1983 injury and unable to do any work after the 1990 injury and resulting surgery. Dr. Nadolsky's opinion was based largely on information obtained from reading Dr. Bond's deposition and other medical records.

The only witness who was in a position to testify that Oshkosh had knowledge of a permanent disability to Ms. Scott at the time she was retained in employment following the 1983 injury was Mary Ann Overstreet, but she stopped short of that. Her testimony was that the claimant probably could not have returned to work when she did without the accommodations that were provided, and that the claimant was a good employee.

At the conclusion of the trial, the trial judge found that the claimant suffered a 65 percent permanent partial disability to the body as a whole from the 1983 injury, an "additional impairment of 10 percent" from the 1986 injury and that she was permanently and totally disabled from the 1990 injury. Without finding that the employer had actual knowledge of the claimant's permanent disability at the time the employee was retained in employment following the 1983 injury, the trial judge concluded that the case was covered by both subsection (a) and subsection (b) of the above quoted statute. He ordered the employer to pay 25 percent of the award and

the fund to pay 75 percent of the award, by adding the 65 percent permanent disability which he found to have resulted from the 1983 injury to the 10 percent award following the 1986 injury. The fund contends before this tribunal that the case is covered only by subsection (b), but does not challenge the finding that the claimant is permanently and totally disabled.

■ Appellate review is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings of fact, unless the preponderance of the evidence is otherwise. T.C.A. § 50–6–225(e)(2). Conclusions of law are subject to *de novo* review on appeal without any presumption of correctness. *See Presley v. Bennett*, 860 S.W.2d 857(Tenn.1993).

■ One of the purposes of the Act is to place upon industry, rather than society, the ultimate cost of risks incident to, and injuries and death resulting from, the production and distribution of goods and services. *See Franklin v. Stone and Webster Engineering*, 183 Tenn. 155, 191 S.W.2d 431 (1946). It is not a social welfare statute. *See Smith v. Tennessee Furniture Industries*, 212 Tenn. 291, 369 S.W.2d 721 (1963).

■ The second injury fund was created by the general assembly to encourage the hiring of handicapped by relieving an employer who knowingly hires a handicapped person or retains an employee after discovering the employee has a physical disability of part of the liability for workers' compensation benefits by shifting liability for payment of benefits to the fund. *See Brown v. John Martin Construction Co.*, 642 S.W.2d 145 (Tenn.1982). In creating the fund, the general assembly set forth certain requirements.

The requirements for invoking subsection (a) are that at the time of the injury, the employee was working for an employer who had properly insured his workers'

compensation liability, and that the employer had actual knowledge of the permanent and preexisting physical impairment at the time the employee was hired or at the time the employee was retained in employment after the employer acquired such knowledge, but in all cases prior to the subsequent injury. If, however, in addition to the above circumstances, the employee has received an award or awards under the Act for permanent disability to the body as a whole, and such award or awards total 100 percent, any permanent disability compensation due from the fund for subsequent compensable injuries to the body as a whole will be paid under subsection (b). *See Cox v. Martin Marietta Energy Systems*, 832 S.W.2d 534 (Tenn.1992) and cases cited therein. There is no provision in the statute for combining subsections (a) and (b).

The employer insists that this case falls under subsection (a) because of three precedents, namely: *Cox v. Martin Marietta, supra, Hale v. CNA Ins. Companies*, 799 S.W.2d 659 (Tenn.1990) and *Stanley v. ABC Mining Company, Inc.*, 1993 WL 229475 (June 28, 1993) (unpublished). *Stanley* is similar to this case in that it involved two prior injuries, for one of which there had been an award and for one of which there was no proof of permanence. The Supreme Court held the fund's liability to be only under T.C.A. § 50–6–208(b), and rejected an argument for a "mixed" award under subsections (a) and (b). *Hale* involved three prior injuries, one of which resulted in an unapproved award of permanent disability benefits. The Supreme Court held that the unapproved settlement should not be considered in determining the employer's liability under subsection (b). In *Cox*, the employee had three previous permanent injuries for which there had been awards, one of which was from the Veterans Administration and the other two of which were workers' compensation awards. The

employer sought a reduction of its liability for all three previous awards, but the Supreme Court held that since the other two were awards under the Act, subsection (b) applied and the employer was not entitled to any reduction of liability because of the Veterans Administration award.

None of the authorities relied upon by the employer permits a combining of subsections (a) and (b) or allows the employer credit for a permanent and preexisting disability without proof it had timely knowledge that the preexisting disability was permanent. The Panel concludes therefore that T.C.A. § 50–6–208(b) is applicable and that the employer is liable for 90 percent and the fund is liable for 10 percent of the total award. The judgment of the trial court is modified accordingly.

As modified, the judgment of the trial court is affirmed. Costs on appeal are taxed to the defendant-appellee.

FRANK F. DROWOTA, Associate Justice, Supreme Court, and JOHN K. BYERS, Senior Judge, concur.