IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 22, 2009 Session

## JACKIE JACKSON, ADMINISTRATOR OF THE ESTATE OF KARON JACKSON v. JOHNNY JOYNER, M.D., ET AL.

Direct Appeal from the Circuit Court for Dyer County
No. 04-112    Lee Moore, Judge

No. W2008-00906-COA-R3-CV - Filed April 7, 2009

The trial court granted Defendants' motion to exclude portions of Plaintiff's expert's deposition testimony and awarded Defendants summary judgment. We vacate the award of summary judgment, reverse the trial court's order excluding testimony of the expert witness, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated in part; Reversed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which HOLLY M. KIRBY, J. and J. STEVEN STAFFORD, J., joined.

Todd A. Rose, Paris, Tennessee, Les Jones, Memphis, Tennessee, and Noel H. Riley, II, Dyersburg, Tennessee, for the Appellant, Jackie Jackson.

Marty R. Phillips and Craig P. Sanders, Jackson, Tennessee, for the Appellees, Johnny Joyner, M.D., and Jackson Clinic Professional Association.

## OPINION

This appeal arises from a medical malpractice action; the facts relevant to our disposition of this matter are undisputed. On September 24, 2003, Karon Jackson (Ms. Jackson) underwent a total hysterectomy. She was forty years of age. The surgery was performed by Defendant Johnny Joyner, M.D. (Dr. Joyner), who was then employed by the Jackson Clinic Professional Association ("the Jackson Clinic"; collectively, "Defendants"). Ms. Jackson was discharged on September 27, 2003. She suffered complications and was referred by Dr. Joyner to Robert Summitt, M.D. ( Dr. Summitt), a urogynecologist, for further evaluation. Dr. Summitt evaluated Ms. Jackson on October 10, 2003, and diagnosed her as having a two millimeter vesicovaginal fistula and a urinary tract infection. Dr. Summitt scheduled Ms. Jackson for a follow-up appointment in six weeks.

On October 11, 2003, Ms. Jackson arrived at the emergency room by ambulance. She was unresponsive upon arrival. Dr. Joyner evaluated Ms. Jackson and he and general surgeon Jeffrey Swetnam, M.D. (Dr. Swetnam), performed a surgical evaluation. Dr. Joyner and Dr. Swetnam discovered Ms. Jackson had a necrotizing fasciitis in her left abdominal wall. Necrotizing fasciitis is a rare bacterial condition that causes tissue to die and infection to spread quickly across deep layers of the skin. Patients diagnosed with the condition apparently have a high rate of mortality. The infection/sepsis resulted from a previously undiagnosed subfascial hematoma/hemorrhage following the hysterectomy on September 24.

Dr. Joyner debrided the infected area to remove the necrotic tissue. During consultation with Ms. Jackson's family following surgery, Dr. Joyner was informed that Ms. Jackson had been taking an undetermined amount of hydrocodone along with the pain medication that had been prescribed by Dr. Joyner. She underwent a second surgery to remove additional tissue, and was treated with antibiotics. Ms. Jackson was transferred to Baptist Hospital in Memphis, where she underwent addition surgery and died on October 13, 2003.

On August 30, 2004, Plaintiff Jackie Jackson (Mr. Jackson), acting as administrator of Ms. Jackson's estate and next friend of Ms. Jackson's surviving children, filed a complaint for wrongful death and medical malpractice against Dr. Joyner and the Jackson Clinic in the Circuit Court of Dyer County. In his complaint, Mr. Jackson alleged that Dr. Joyner's failure to diagnose the subfascial hematoma and his failure to "evaluate, treat or monitor the hematoma" until October 11, 2003, was a clear deviation of the standard of care. He alleged that Dr. Joyner's failure to timely diagnose and treat the hematoma caused the necrotizing fasciitis and sepsis and proximately caused Ms. Jackson's death. Mr. Jackson further asserted the Jackson Clinic was liable under the doctrine of respondeat superior. Mr. Jackson sought damages in the amount of $2,000,000 and demanded a trial by jury. In December 2006, Mr. Jackson amended his complaint to pray for damages in an amount to be determined by the jury and to include costs and prejudgment interest.

Defendants answered and denied Mr. Jackson's allegations of negligence. They also asserted the doctrine of comparative fault, asserting, *inter alia*, that Ms. Jackson gave inaccurate, false, and incomplete information regarding her medical history, that she failed to follow her health care provider's instructions, and that she abused prescription drugs.

Following discovery, including video depositions of Mr. Jackson's expert witness, Daniel Strickland, M.D. (Dr. Strickland), and Defendants' expert witnesses, Michael Gelfand, M.D. (Dr. Gelfand) and Dr. Summit, the matter was set for trial beginning January 23, 2008. Rather than calling the expert witnesses to testify at trial, their video depositions were to be played in place of live testimony. On November 29, 2007, Defendants filed a motion to exclude portions of Dr. Strickland's "causation testimony." In their motion, Defendants moved to exclude 1) Dr. Strickland's testimony that Dr. Joyner's documentation of Ms. Jackson's blood values on October 8, 2003, was not "medically credible" because Ms. Jackson's chart did not include a corresponding lab report; 2) a chart prepared by Dr. Strickland based upon Ms. Jackson's medical records in order to assist the jury in understanding Ms. Jackson's blood values in September and October 2003; 3) Dr. Strickland's testimony regarding Ms. Jackson's medical expenses; 4) Dr. Strickland's testimony that Ms. Jackson would have survived and been able to return to work had she undergone a second

operation to evacuate the hematoma in a timely fashion. Defendants asserted Dr. Strickland's testimony was speculative and that its probative value was outweighed by the danger of unfair prejudice. Defendants further asserted that Dr. Stickland based his causation opinion upon nothing but experience despite admitting that he had never treated necrotizing fasciitis, that he is not an infectious disease specialist and would not treat the actual condition at issue; that he knew of no scientific article or study which would support his causation opinion; and that Dr. Strickland's testimony was entirely speculative.

On December 14, 2007, Defendants moved for summary judgment on the basis that Mr. Jackson had failed to provide any evidence to prove causation as required by Tennessee Code Annotated § 29-26-115. Following a hearing on December 20, 2007, by order entered March 6, 2008, the trial court granted Defendants' motion and excluded Dr. Strickland's causation testimony as lacking trustworthiness and reliability. The trial court granted Defendants' motion for summary judgment the same day. Mr. Jackson filed a timely notice of appeal to this Court on April 1, 2008.

### Issue Presented

The sole issue presented for our review, as we slightly rephrase it, is whether the trial court erred by awarding summary judgment to Defendants upon excluding the causation testimony of Mr. Jackson's expert witness.

### Standard of Review

Our review of a trial court's award of summary judgment is well-settled and recently has been clarified more definitively by the supreme court. We review a trial court's award of summary judgment *de novo* with no presumption of correctness, reviewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008)(citations omitted).

Summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* at 83 (quoting Tenn. R. Civ. P. 56.04; *accord Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000)). The burden of persuasion is on the moving party to demonstrate, by a properly supported motion, that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* (citing *see Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). The moving party may carry its burden by "(1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." *Id.* (citing *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *see also McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n. 5). A mere "assertion that the nonmoving party has no evidence" will not suffice. *Id.* at 84 (citing *Byrd*, 847 S.W.2d at 215). "[E]vidence that raises doubts about the nonmoving party's ability to prove his or her claim is also insufficient." *Id.* (citing *McCarley*, 960 S.W.2d at 588). Rather, "[t]he moving party must either produce evidence or refer to evidence previously submitted by the nonmoving

party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial." *Id.* (citing *Hannan*, 270 S.W.3d at 5). In order to negate an essential element, "the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." *Id.* (citing *see Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004)). The motion for summary judgment must be denied if the moving party does not make the required showing. *Id.* (citing *Byrd*, 847 S.W.2d at 215).

After the moving party has made a properly supported motion, the nonmoving party must "produce evidence of specific facts establishing that genuine issues of material fact exist." *Id.* (citing *McCarley*, 960 S.W.2d at 588; Byrd, 847 S.W.2d at 215). To satisfy its burden, the nonmoving party may: (1) point to evidence of over-looked or disregarded material factual disputes; (2) rehabilitate evidence discredited by the moving party; (3) produce additional evidence that establishes the existence of a genuine issue for trial; or (4) submit an affidavit asserting the need for additional discovery pursuant to Rule 56.06 of the Tennessee Rules of Civil Procedure. *Id.* (citing *McCarley*, 960 S.W.2d at 588; *accord Byrd*, 847 S.W.2d at 215 n. 6). The court must accept the nonmoving party's evidence as true, resolving any doubts regarding the existence of a genuine issue of material fact in that party's favor. *Id.* (citing *McCarley*, 960 S.W.2d at 588). "'A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed.'" *Id.* (quoting *Byrd*, 847 S.W.2d at 215). "A disputed fact presents a genuine issue if 'a reasonable jury could legitimately resolve that fact in favor of one side or the other.'" *Id.* (quoting *Byrd*, 847 S.W.2d at 215).

We review a trial court's decision regarding whether a witness qualifies as an expert witness under an abuse of discretion standard. *Tire Shredders, Inc. v. ERM-North Central, Inc.*, 15 S.W.3d 849, 864 (Tenn. Ct. App. 1999). An abuse of discretion occurs where the trial court has applied an incorrect legal standard or where its decision is illogical or unreasoned and causes an injustice to the complaining party. *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004).

### *Analysis*

In this case, the trial court awarded summary judgment to Defendants based upon the lack of any evidence in the record, other than the excluded testimony of Dr. Strickland, to demonstrate that Dr. Joyner's alleged breach of the standard of care by failing to diagnose and treat Ms. Jackson's condition earlier proximately caused her death. Further, although Defendants' November 29 motion to exclude portions of Dr. Strickland's testimony was not styled as such, it was, in fact, a motion in limine made to exclude references to portions of Mr. Jackson's evidence. The trial court awarded summary judgment to Defendants immediately following its ruling on Defendants' motion in limine where granting that motion effectively negated the essential causation element of Mr. Jackson's claim.

In his brief to this Court, Mr. Jackson asserts that, although a trial court's decision regarding the admission of evidence generally is afforded wide discretion, in this case a more stringent standard of review should apply because Defendants essentially used a motion in limine as a substitute for a motion for summary judgment. Mr. Jackson asserts that a more rigorous standard is mandated in light of our recent holding in *Duran v. Hyundai Motor America, Inc.*, 271 S.W.3d 178

(Tenn. Ct. App. 2008). He further asserts that, even under an abuse of discretion review, the trial court erred under Rules 702 and 703 of the Tennessee Rules of Evidence ("Rule 702" and "Rule 703," respectively) and under *McDaniel v. CSX Transportation, Inc.*, 955 S.W.2d 257 (Tenn. 1997), and its progeny. Mr. Jackson argues that the Defendants "have not challenged the analytical framework of [his] theory of causation" and that, as a practicing physician with long experience specializing in obstetrics and gynecology, Dr. Strickland is qualified to testify as an expert witness with respect to the standard of care and whether Ms. Jackson's death resulted from a breach of that standard by Dr. Joyner. The essence of Mr. Jackson's argument, as we perceive it, is that Dr. Strickland is qualified to present an expert opinion and that the weight to be afforded to that opinion is a matter to be determined by a jury.

Defendants, on the other hand, assert the trial court did not err in excluding Dr. Strickland's testimony with respect to causation. In their brief to this Court, Defendants do not dispute that Ms. Jackson's death was caused by necrotizing fasciitis and sepsis. They also do not argue that Dr. Strickland is unqualified to testify regarding whether Dr. Joyner breached the standard of care by failing to diagnose Ms. Jackson's condition earlier, although they deny that assertion and submit that Dr. Joyner properly referred Ms. Jackson to Dr. Summitt, who did not diagnose the infection. Rather, they contend that the trial court correctly excluded Dr. Strickland's testimony that earlier diagnosis and treatment would have prevented Ms. Jackson's death because the testimony was based only on Dr. Strickland's "experience." They further argue that, because a general gynecologist would not manage a patient after diagnosing necrotizing fasciitis and sepsis, Dr. Strickland's testimony "lacks trustworthiness and reliability necessary to substantially assist the trier of fact." Defendants also rely on Rules 702 and 703 and *McDaniel* and its progeny in support of their argument. Defendants do not address Mr. Jackson's assertion that their motion to exclude portions of Dr. Strickland's testimony was an improper use of a motion in limine, but contend the trial court's decision is subject to an abuse of discretion standard of review and that summary judgment was appropriate where Mr. Jackson could provide no evidence of causation.

In its March 2008 order granting Defendants' motion to exclude portions of Dr. Strickland's testimony, which was, we note, one of several motions in limine, the trial court determined that Dr. Strickland's "experience in this particular area lacks trustworthiness and reliability necessary to substantially assist the trier of fact." Reading the trial court's order together with the attached excerpt of the December 20, 2007, hearing on Defendants' motion, we perceive the trial court's determination to be based on Dr. Strickland's lack of direct experience in treating necrotizing fasciitis after diagnosis of the condition.

We begin our consideration of the parties' arguments by noting that, as Mr. Jackson points out, this Court recently opined that a motion in limine should not be used as a vehicle to preclude a claim or defense or as a substitute for a motion for summary judgment. *Duran v. Hyundai Motor America, Inc.*, 271 S.W.3d 178, 192 (Tenn. Ct. App. 2008). Rather, a motion in limine provides a means by which a party may seek guidance from the trial court regarding an evidentiary question in order to formulate their trial strategy. *Id.* It essentially substitutes for an evidentiary objection which may be made at trial. *Id.* A motion in limine is not subject to the same safeguards as a motion for summary judgment or for partial summary judgment. *Id.*

As the parties in this case agree, the trial court must function as a gatekeeper to determine whether an expert's proffered opinion will substantially assist the trier of fact. *McDaniel v. CSX Transportation*, 955 S.W.2d 257, 264 (Tenn. 1997). Rule 702 provides:

> [i]f scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

Tenn. R. Evid. 702. Rule 703 further provides:

> [t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

Tenn. R. Evid. 703. Although an expert opinion should not be admitted when it is based on mere speculation, it is the function of the trier of fact to determine the weight to be given to legitimate conflicting views. *McDaniel*, 955 S.W.2d at 265. Admissible evidence is "tested with the crucible of vigorous cross-examination and countervailing proof" following which a defendant may challenge its sufficiency by moving for a directed verdict. *Id.*

As Defendants assert, expert testimony cannot be based on mere speculation or connection to data only through the "*ispse dixit*" of the expert. A connection must exist between the expert's knowledge and the basis for the expert's opinion. *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 275 (Tenn. 2005). There must not be an "analytical gap" between the data upon which the expert relies and the opinion offered by the expert. *Id.* The factors outlined in *McDaniel* and its progeny, however, are not exclusive. *Id.* An expert's opinion may be considered reliable if the conclusions reached by the expert are straight-forward and are supported by a "'rational explanation which reasonable [persons] could accept as more correct than not correct.'" *Id.*(citing *State v. Stevens*, 78 S.W.3d 817, 832 (Tenn. 2002)(quoting *Wood v. Stihl*, 705 F.2d 1101, 1107-08 (9th Cir. 1983)).

This lawsuit arises from a death caused by a deadly bacterial infection and sepsis resulting from a subfascial hematoma following a hysterectomy. The expert testimony Mr. Jackson seeks to offer in this case is that of an obstetrician/gynecologist with extensive experience who is licensed to practice in four states. A former Air Force physician, Dr. Strickland was chief of the Division of Maternal Child Health, a division which combined pediatrics and obstetrics/gynecology. In addition to obstetrics and gynecology, Dr. Strickland has practiced in the area of infertility and endocrinology. Defendants challenge neither Dr. Strickland's medical qualifications as a practicing obstetrician/gynecologist nor his competency to testify regarding the applicable standard of care, notwithstanding their contention that his testimony is erroneous. Rather, Defendants assert that Dr. Strickland is not sufficiently personally experienced with the treatment of necrotizing fasciitis and

sepsis to opine on whether earlier diagnosis and treatment would have prevented Ms. Jackson's death.

In its motion to exclude Dr. Strickland's "causation testimony," Defendants also sought to exclude Dr. Strickland's testimony that Dr. Joyner's documentation of Ms. Jackson's blood values on October 8, 2003, was not "medically credible" because Ms. Jackson's chart did not include a corresponding lab report. Dr. Strickland's testimony regarding the lack of lab documentation in Ms. Jackson's chart and Dr. Joyner's notes regarding her blood levels, however, are not relevant to causation. Clearly, Dr. Strickland is qualified to testify regarding the documentation in Ms. Jackson's chart, or lack thereof, and to offer his opinion regarding Dr. Joyner's notes.

Defendants also sought to exclude a chart prepared by Dr. Strickland based upon Ms. Jackson's medical records offered to assist the jury in understanding Ms. Jackson's blood values in September and October 2003. This chart regarding Ms. Jackson's blood levels likewise is irrelevant to the issue of causation. Rather, Dr. Strickland's testimony regarding Ms. Jackson's blood levels is relevant to whether Dr. Joyner should have recognized a "red flag" indicating a serious condition based upon Ms. Jackson's decreased blood levels.

Dr. Strickland testified that the decreased blood levels indicated a "pretty significant hemorrhage, blood loss . . . That should have been a red flag." He further stated that Ms. Jackson's blood levels the morning after surgery were "even worse" and that she was

> basically in shock at that time . . . But clearly her blood loss, which at that point had still not been recognized - - as far as I could tell from the records, Dr. Joyner has not even still recognized that she'd lost that much blood. At that point, that was half her blood volume gone.

Dr. Strickland stated, "[y]eah, he [Dr. Joyner] breached the standard of care at this point by failing to recognize that she had a postoperative blood loss, and failing to determine where that blood was going. . . . He simply transfused her." When asked about his opinion regarding Dr. Joyner's explanation, Dr. Strickland stated that Dr. Joyner's explanation was "not medically credible."

In short, Dr. Strickland's testimony regarding Ms. Jackson's blood levels is relevant to the question of whether Dr. Joyner should have recognized the hematoma or hemorrhage and as to whether Dr. Joyner breached the standard of care. Dr. Strickland is clearly qualified to testify regarding this issue and his proffered visual aid does not present a danger of unfair prejudice. Defendants further sought to exclude Dr. Strickland's testimony regarding Ms. Jackson's medical expenses. We cannot fathom how testimony regarding Ms. Jackson's medical expenses is relevant to causation.

Finally, Defendants sought to exclude Dr. Strickland's testimony that Ms. Jackson would have survived had she undergone treatment to evacuate the hematoma in a timely fashion. Upon review of the record, including the expert depositions, we cannot say such evidence is inadmissable or that Dr. Strickland is not qualified to offer an expert opinion on this issue. It is undisputed in this

case that Ms. Jackson died as a result of sepsis/necrotizing fasciitis. Dr. Strickland testified that Dr. Joyner's breach of the standard of care

> allowed [Ms.] Jackson to develop a severe sepsis, manifested by - - physically, by necrotizing fasciitis and also manifested by, basically, circulatory collapse from that sepsis from which she eventually died. It had gotten so bad - - her sepsis had gotten so bad by the time it was finally recognized, that, in spite of extreme measures, including three surgical procedures and referral to a major medical center, she had become so sick she could not survive that injury. And that directly resulted [from] Dr. Joyner's breaches that I've already mentioned.

Dr. Strickand was asked whether Ms. Jackson would have "died if Dr. Joyner had met the standard of care as [Dr. Strickland] described it[.]" Dr. Strickland replied that, more likely than not, she would not have

> [b]ecause this problem could have been – if it had been identified and evaluated and managed in a timely fashion, it could have been treated well before she became so severely septic that she was no longer salvageable. There was plenty of time to recognize that she was getting sick, to intervene. She would have required an operation, no question about that. . . . But, had that operation been done in a timely fashion, she would have been salvageable.

When asked what operation he was referring to, Dr. Strickland replied:

> [t]he operation of getting in and evacuating that hematoma, that abscess cavity, and debriding necrotic tissue and allowing her to heal up. Had that been done in a timely fashion, the damage would not have been severe, she would not have been as severely septic, and she would have survived.

Dr. Stickland was asked whether, in his opinion, it was more likely than not that treatment rendered after October 8, 2003, was likely to have saved Ms. Jackson's life. He replied, "[m]y opinion is it probably would not." In light of his experience, Dr. Strickland is qualified to offer this expert opinion. The weight to be afforded to Dr. Strickland's testimony in light of his lack of direct experience treating infectious disease is a matter to be determined by the finder of fact.

The issue presented by this appeal is not whether Dr. Joyner breached the standard of care with respect to the choice of treatment of the necrotizing fasciitis and sepsis which caused Ms. Jackson's death. The parties do not dispute that Ms. Jackson died as a result of becoming severely septic. The dispute does not revolve around the treatment of the infection *per se*. Rather, this lawsuit involves a determination of whether Dr. Joyner breached the standard of care by failing to diagnose the hematoma, and whether the late diagnosis and treatment of the subfascial hematoma caused the sepsis/infection to become so severe that Ms. Jackson could not have survived.

After reviewing the depositions contained in the record, we believe Dr. Strickland's testimony regarding whether Ms. Jackson's subfascial hematoma should have been diagnosed earlier following the hysterectomy and whether earlier diagnosis, and, accordingly, earlier treatment of the

resulting sepsis, would have prevented her death is probative and is not outweighed by the danger of unfair prejudice in this case. The weight to be afforded Dr. Strickland's opinion following cross-examination and Defendants' proof is a matter to be determined by the trier of fact.

### *Holding*

In light of the foregoing, we vacate the trial court's award of summary judgment to Defendants and reverse the trial court's order excluding portions of Dr. Strickland's testimony. This matter is remanded to the trial court for further proceedings. Costs of this appeal are taxed to the Appellees, Johnny Joyner, M.D. and Jackson Clinic, P.A., for which execution may issue if necessary.

_____

DAVID R. FARMER, JUDGE