## J. H. PETERSON v. CLAY CUNNINGHAM.

Eastern Section.     April 30, 1927.

No petition for Certiorari was filed.

1. **Contracts. Evidence. In determining whether a contract was one of sale or agency all the facts and circumstances may be taken into consideration.**

    In an action to recover a balance alleged to be due on the sale of certain shares of stock, where it was alleged that the defendant was acting as agent of the complainant and defendant insisted that he had purchased the stock, held that all the circumstances attending the transaction should be taken into consideration in determining whether the contract was one of sale or agency.

2. **Contracts. "Sale or return" contract defined.**

    A very common form of contract is known as "sale or return" by which property is sold, but is liable to be returned to the seller, at the option of the buyer. In this class of cases the transaction vests title immediately in the buyer, who has the privilege of rescinding the sale, and, until this is exercised, the title remains in him. In such case the property in the goods passes to the buyer, the price is fixed at the time of the sale and delivery, the buyer deals with the goods as his own, disposes of them as he pleases, for cash or on credit, is under no obligation to give any account of his disposition of them, and is only liable to pay for them at the price fixed beforehand, without any reference to the price at which he sells them.

3. **Contracts. Contract made by a party in violation of a statute requiring a license is not void.**
     The courts further than to deny their aid in the enforcement of any alleged rights gained in contravention of a statute prohibiting one to deal in real estate without a license have not gone so far as to declare such contracts absolutely void, and the amounts received thereunder recoverable at the instance of one of the parties.

Appeal from Chancery Court, Blount County; Hon. Ernest R. Taylor, Chancellor.

Affirmed.

Gamble, Crawford & Goddard, of Maryville, for appellant.

Brown & Johnson, of Maryville, for appellee.

SNODGRASS, J. This bill was filed to recover a balance alleged to be due the complainant on a sale of fifty shares of stock in the Shoreland Development  Company, of Miami, Florida. The shares were of the par value of $100 each. It was claimed in the bill that the defendant in the sale of the stock, which was had in Florida, at the price of $10,000, was acting as the agent of the complainant, and that his compensation or commission for the sale was to be only $100. It was insisted that the minimum price at which the defendant was authorized to make the sale was $8,000, whereas it was alleged the defendant sold the stock for $10,000, and only paid the complainant $8,000, and a decree was sought against the defendant, after allowing him the sum of $100, for the difference between the $8,000, and the amount for which it was alleged the stock was sold, or $1,900. Afterwards the bill was amended, alleging that defendant did not have any license to deal in stocks of that kind at the time of the transaction and as required by chapter 134 of the Acts of 1925, and that the sale was void for that reason; that upon grounds of public policy a right of recovery existed in complainant, even if it be conceded the defendant had purchased the stock under an option contract as claimed.

The defendant in his answer claimed to have purchased the stock under an option which permitted him to return it in fifteen days, or, in lieu thereof, the sum of $8,000. He claims to have paid the $8,000 in full satisfaction of his contract, and that thereafter there was nothing due the complainant. It was explained, however, that there was a conditional agreement whereby the stock might have been sold for $8,000, and complainant in that event had agreed to pay him on expenses the sum of $100.

Proof was taken and the cause heard before the Chancellor, who dismissed the bill, holding that the defendant had not acted as agent in the sale of the stock, but had purchased the same outright. In his opinion the Chancellor found as a fact that the defendant was a dealer the buying stocks and securities without having paid the privilege li-

cense as required by law, but was of opinion that the transaction between the complainant and defendant was a closed transaction; that there was nothing remaining to be done between the parties to consummate the sale, and that complainant could not take advantage of the fact that the defendant did not have a privilege license after the transaction had been fully closed, and that no right of recovery therefore existed. Complainant has successfully appealed from the decree and has assigned the following as errors:

"First. The Honorable Chancellor erred in holding the fact that there was no agreement between the parties for appellee to sell this stock in a representative capacity, and in holding that there was a sale of the stock by Peterson to Cunningham outright for $8000."

"Second. The Honorable Chancellor erred in holding that because this was a closed or executed contract between the parties that the appellant Peterson could not recover from the appellee, Cunningham, the $1900 sued for."

"Third. The Honorable Chancellor erred in dismissing appellant's bill and taxing him with the costs."

It is not seriously controverted that when the stock was taken over on August 14, 1925 the defendant gave to complainant the following receipt:

"Maryville, Tennessee, August 14, 1925. Received of John Peterson, stock certificate No. 368, Shoreland Company, issued for fifty shares par value $100, dated October 28, 1924, together with option certificate of conversion, which are to be returned to him within fifteen days from date or proceeds in amount of $8000." Signed "Clay Cunningham."

Complainant professes never to have examined this receipt, but to have lost or mislaid the receipt that was given him. The defendant files a copy, appearing in the record, and says he read it over to the complainant when it was delivered to him; that it embodies the contract between the parties, except as to the contingency that if the stock could not be sold for in excess of $8000, and it was sold at that figure, complainant agreed to pay $100 on expenses.

We think the inherent probabilities and the actions of the parties in reference thereto corroborate the defendant's contention that it was a sale, and that the weight of the proof supports the finding of the Chancellor in this particular. Complainant's insistence is that defendant was only to have $100 as a commission in any event, but when defendant returned he says, defendant told him he got a little more than $8000, and nothing was said about the $100. He was obligated only for the $100 according to his theory. It was not demanded of him, and as he was told the stock had been sold for a sum in excess of $8000, he might well have suspicioned that there was

more due him, as well as an exact explanation, if the trade had been as he contended. Yet he contents himself until he finds that the stock was sold for $10,000, and then demands more money. The defendant says complainant demanded that he should pay him $1000 more, which was only a part of the alleged profits. We think this apparent acquiescence of both parties that no exact explanation was due as a matter of contract right is a very strong circumstance, and when coupled with the fact that defendant had heard the stock was worth four or five times its face value before he purchased it, and complainant being willing to sell for $8000, and his principal reason for the trip to Florida being to chance this speculation of the stock, it is hardly credible that he would have assumed merely an agency limiting his compensation to $100. It is but natural that he should have taken the very kind of contract that he says he did, if it was available. There is a conflict between Dr. Ford and the defendant. Ford was to have received an equal division for all the stock sold for in excess of $10,000, by an arrangement made before defendant left for Florida, and Ford, not having been taken fully into defendant's confidence, felt himself entitled upon discovery to a division of the profits that defendant had made, but it does not seem to have been so nominated in the agreement.

Had the defendant not returned the stock within fifteen days, under the terms of the receipt which was left with the complainant he would have been bound to pay the $8000. Regarding such a contract it is said in R. C. L., Vol. 24, page 425:

"A very common form of contract that is known as 'sale or return,' by which property is sold, but is liable to be returned to the seller, at the option of the buyer. In this class of cases the transaction vests title immediately in the buyer, who has the privilege of rescinding the sale, and, until this is exercised, the title remains in him. In such cases the property in the goods passes to the buyer, the price is fixed at the time of the sale and delivery, the buyer deals with the goods as his own, disposes of them as he pleases, for cash or on credit, is under no obligation to give any account of his disposition of them, and is only liable to pay for them at the price fixed beforehand, without any reference to the price at which he sells them."

While of course if the contract or receipt embodied something different from what had been agreed upon, and complainant simply trusting the defendant failed to read it, he would perhaps not be estopped to claim otherwise, but in this case it is claimed the receipt embodied what had been agreed upon, and, corroborated by the apparent interpretation which the action of the parties placed upon it, supports, we think, the finding of the Chancellor. Complainant, however, insists that the Chancellor having found that the de-

fendant was engaged in the business of stock dealing without paying the privilege therefor under the Act of 1925 rendered the contract void, and that, furthering the supposed public policy of the State, the complainant should have been allowed to recover the difference claimed, and cites numerous authorities thought to be decisive of this right. But we think our courts, further than to deny their aid in the enforcement of any alleged rights gained in contravention of such statutes, have not gone so far as to declare such contracts absolutely void, and amounts received thereunder recoverable at the instance of one of the parties. On the contrary it seems that in the case of Singer Mfg. Co. v. Draper, and Singer Mfg. Co. v. Looney, 103 Tenn., 262, (52 S. W. 879) while it was held that such provisions regarding privilege are an express prohibition against persons performing or exercising any such privilege without license, and if they do their acts are in violation of law, and in all contracts for their enforcement or benefit are illegal and unenforceable, and that the courts will not enforce contracts made in open violation of the law, and will give no relief either by way of enforcing the contract or in giving damages for its breach, and while in that case they refused to allow the company to replevy the property, a right founded in the contract, the court observed:

"It must be borne in mind that as between the parties the contract is not void, and the principle which prevents the plaintiff's recovery is, that the court will not lend their aid to enforce contracts and transactions made in fraud and violation of its laws, and which it has impliedly prohibited; nor will it lend its aid to repudiate them in order to enable a party making them to reap a benefit therefrom, *and this on grounds of public policy.*" (Italics ours.)

So, further than to punish by the infliction of the penalty which the statutes may provide for violation of their provisions when properly required to answer, our courts have defined the policy to be in this class of executed contracts to leave the parties to the consequences of their own settlement, and will aid neither the one to enforce nor the other to repudiate. The decree of the Chancellor is therefore affirmed, with costs against appellant and his security.

Portrum and Thompson, JJ., concur.