**BINSWANGER SOUTHERN (N.C.), INC., Plaintiff/Appellant,**

**v.**

**TEXTRON, INC., Defendant,**

**and**

**AVCO Corporation, Inc., Defendant/Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

April 14, 1993.

Permission to Appeal Denied by Supreme Court Aug. 2, 1993.

Paul S. Davidson and James H. Drescher, Stokes & Bartholomew, Nashville, for plaintiff-appellant.

Michael E. Moore, Waller, Lansden, Dortch & Davis, Nashville, for defendant-appellee.

*OPINION*

LEWIS, Judge.

This is an appeal by plaintiff, Binswanger Southern (N.C.), Inc. (Southern), from the trial court's granting of defendant's, AVCO Corporation (AVCO), motion for summary judgment. The court granted the motion because the exclusive Sales Agreement entered into by Southern's principal, the Binswanger Company, and AVCO was illegal and unenforceable because Southern was not a named party to the Agreement and the party named in the Agreement, the Binswanger Company, was unlicensed as a real estate broker in Tennessee.

Southern filed a cross-motion for summary judgment, alleging that the Sales Agreement had been assigned to it by the Binswanger Company immediately after execution and that the Agreement entitled Southern to the real estate commission realized from the sale of AVCO's real property to the Metropolitan Transit Authority (MTA). It was and remains the insistence of Southern that the Binswanger Company did not violate Tennessee law by simply negotiating and entering into an Agreement to sell real estate in Tennessee. For the limited purpose of summary judgment, AVCO admits the existence of the assignment of the Agreement from the Binswanger Company to Southern.

The pertinent facts are as follows:

Southern filed its complaint on 14 April 1992 against AVCO and AVCO's parent company, Textron, Inc.[1] In its complaint, Southern alleged that it had entered into a Sales Listing Agreement with AVCO and was owed a real estate commission in connection with the sale of AVCO's real property located in Davidson County, Tennessee. The complaint alleged that Southern, a North Carolina corporation, did business in Tennessee under an assumed corporate name, "The Binswanger Company."

AVCO moved for summary judgment on 2 July 1992 on the grounds that (1) Southern was not a party to the Sales Listing Agreement and therefore lacked standing to sue on the Agreement, and (2) the party with whom AVCO in fact contracted, The Binswanger Company, a Pennsylvania general partnership, was barred as a matter of law from seeking to enforce the Sales Listing Agreement because it did not hold a Tennessee real estate broker's license at the time it solicited the listing, at the time it entered into the Sales Listing Agreement with AVCO, or at any other time.

Southern responded to AVCO's motion for summary judgment by conceding that it was not a party to the Listing Agreement, that the "Binswanger Company" was a separate and distinct entity and not merely an assumed corporate name for Southern as asserted in the complaint, and that the Binswanger Company was, in fact, unlicensed in Tennessee at all relevant times. However, Southern claimed in its response to the motion that it had been "assigned" the Binswanger Company's rights under the Sales Listing Agreement and should be permitted to sue to enforce the Sales Listing Agreement because it did possess the required Tennessee broker's license. This response by Southern was in the form of a cross-motion for summary judgment, supported by affidavits, and was filed on 14 August 1992.

AVCO's motion was heard by the trial court on 21 August 1992. Following oral argument, the trial court granted AVCO's motion for summary judgment[2] on the basis that: (1) the Binswanger Company, and not Southern, was the party with whom AVCO had contracted; (2) the Binswanger Company had violated the Tennessee Real Estate Broker License Act by soliciting and entering into the Sales Listing Agreement without having first obtained a real estate broker's license; (3) the Binswanger Company was therefore barred by Tennessee Code Annotated, Section 62–13–105 from suing to en-

---

1. By order entered 1 June 1992 the trial court dismissed the action as to Textron, Inc., pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief could be granted. That order has not been appealed from.

2. The trial court filed a final judgment against Southern on 2 September 1992. On 5 November 1992, the court, upon AVCO's motion to alter or amend findings set forth in final judgment entered 2 September 1992, issued a revised final judgment.

force the agreement; and (4) as a mere assignee of the Binswanger Company's rights under the Sales Listing Agreement, Southern took those rights subject to all the defenses of AVCO to the enforcement of the Agreement. The trial court therefore ruled that Southern was also barred from suing to enforce the Agreement and from recovering any sales compensation under the Agreement. Southern's cross-motion was thereby rendered moot. Southern has appealed from the sustaining of that motion for summary judgment.

In 1988 AVCO owned two tracts of real property located adjacent to the Cumberland River in Nashville, known as 130 Nestor Street. On 28 July 1988, AVCO entered into an exclusive sales agreement with Coldwell Banker Commercial Real Estate Services (Coldwell Banker) pursuant to which Coldwell Banker committed to use its best efforts to effect the sale of the Nestor Street property. The initial term of the agreement between AVCO and Coldwell Banker concluded on 27 July 1989. The initial term was extended twice, the first time through 31 December 1989, and the second time through 31 December 1990.

During the term of the AVCO–Coldwell Banker agreement as extended, Coldwell introduced a number of prospective purchasers to the Nestor Street property. One of those prospective purchasers was the MTA.

During December 1990, the Binswanger Company of Philadelphia, Pennsylvania, solicited AVCO in an effort to have AVCO change brokers upon the expiration of the Coldwell Banker agreement. The Binswanger Company sent a team of representatives to AVCO's Nashville office in December 1990 to make an oral presentation and provided AVCO with a written brochure describing the services offered. The brochure identified the company which would be performing these services as the Binswanger Company.

By letter dated 29 January 1991, David Thurston, Vice–President and General Counsel for the Binswanger Company, forwarded a proposed "Exclusive Agency Agreement" to AVCO's in-house counsel in Nashville for review. This agency agreement identified the agent with whom AVCO would be contracting as "The Binswanger Company, corporate headquarters, Seven Pen Center, 1635 Market Street, Philadelphia, Pennsylvania 19103." The proposed agreement enclosed with the letter was executed by David Thurston for the Binswanger Company and provided for the payment of a six percent (6%) commission to the Binswanger Company upon any sale of the Nestor Street property during the contract term.

Subsequent drafts of the proposed agreement were exchanged between the parties during early February 1991 and on 18 February 1991, a final Sales Listing Agreement was signed which identified the contracting parties as AVCO and "The Binswanger Company." The final Sales Listing Agreement identified the party who would offer the property for sale and who would conduct negotiations with prospective purchasers as the Binswanger Company. The final Sales Listing Agreement provided for the payment of a six percent (6%) commission to the Binswanger Company. The final Sales Listing Agreement required AVCO to pay up to $50,213.00 in advertising and promotional expense to the Binswanger Company.

Additionally, the final Sales Listing Agreement between AVCO and the Binswanger Company excluded from its terms until 31 March 1991 any sale or contract for sale of the Nestor Street property to any one of fifteen prospective purchasers who had been introduced to the property by AVCO's prior agent, Coldwell Banker. One of the prospective purchasers excluded was MTA.

Early in 1991,[3] AVCO signed an agreement to sell the Nestor Street property to

---

3. AVCO claims it "sold" the property to MTA on 29 March 1991, even though the closing did not occur until the Summer of 1991. If this date is accepted as true then no real estate commission would be due because of the exclusion of a sale to MTA, and fourteen other potential purchasers, from the contract through 31 March 1991.

Southern, however contends that no sale took place until after March 1991 and that it is therefore entitled to the sales commission. Southern claims that AVCO refused to pay the commission since Southern did not find the buyer, even though there was an exclusive listing agreement. The plaintiff alleges that the broker licensing

MTA for $4,475,000.00. AVCO subsequently conveyed the Nestor Street property to MTA for that price in the summer of 1991. The sale to MTA was procured entirely through the efforts of Coldwell Banker. Neither the Binswanger Company nor any of its affiliates played any role in procuring the sale to MTA. AVCO paid a $134,250.00 real estate commission to Coldwell Banker in connection with the sale of the property to MTA, the amount stipulated in the AVCO–Coldwell Banker listing agreement.

Subsequently, Binswanger Management Corporation, a division of the Binswanger Company, invoiced AVCO for $29,870.00, representing the expenses allegedly incurred by the Binswanger Company in connection with the preparation and distribution of marketing brochures and press releases during March 1991. AVCO paid the Binswanger Company the amount invoiced. Subsequently, the Binswanger Company, by letter dated 4 December 1991 from Frank G. Binswanger, Jr., Chairman of the Binswanger Company, made a demand upon AVCO's parent company, Textron, Inc., for payment of the six (6%) percent real estate commission on the sale to MTA. This demand letter made no mention of the assignment of the right to collect a commission to Binswanger Southern, Inc., or any other entity. The demand was made on behalf of the Binswanger Company. The Binswanger Company and Southern are separate entities. The Binswanger Company is a Pennsylvania general partnership headquartered in Philadelphia, Pennsylvania. Southern is a North Carolina corporation, headquartered in Charlotte, North Carolina. The Binswanger Company did not hold a Tennessee real estate broker's license at any time during 1990 or 1991, nor did it hold a Tennessee real estate broker's license at the time it solicited the listing of the Nestor Street property, nor at the time it entered into the Sales Listing Agreement, nor at the time it invoiced and received payment of $29,870.00 in promotional expenses, nor at the time Mr. Frank G. Binswanger, Jr. made

demand upon Textron for payment of the six percent real estate commission.

Southern did hold a Tennessee real estate broker's license in 1990 and 1991, but was not the party with whom AVCO contracted. Southern for the first time claimed to have been assigned Binswanger Company's rights under the Sales Listing Agreement subsequent to AVCO's motion for summary judgment in the trial court. Southern presented no evidence in opposition to the summary judgment motion that AVCO was ever informed of the assignment or of the Binswanger Company's decision to delegate its duties under the Sales Listing Agreement to Southern, and Southern produced no written instrument documenting that any assignment had in fact occurred. However, that is not a question in this appeal since AVCO, for the purpose of the summary judgment motion, admits the assignment.

Southern's first issue is: "Whether the trial court erred in ruling that the Real Estate Sales Listing Agreement between AVCO and the Binswanger Company was both illegal and unenforceable where AVCO knew the agreement was to be performed by Binswanger's licensed Tennessee brokers."

The claim asserted by Southern is founded solely upon its rights as an assignee under the Sales Listing Agreement. Southern concedes that it was not a party to the Agreement but asserts the right to recover under the Agreement as the Binswanger Company's assignee.

■■■■ The trial court held, and we agree, that Southern's right to recover under the Sales Listing Agreement is entirely derivative from and dependent upon the rights of its assignor, the Binswanger Company. An assignee of a non-negotiable chose in action, such as a contract, steps into the shoes of his assignor and takes his assignor's rights subject to all defenses which may be asserted against the assignor in an action to enforce the right. *Third Nat'l Bank v. Capitol Records, Inc.*, 60 Tenn.App. 189, 445 S.W.2d 471 (1969). Southern's right to recover under

requirements did not come into question until after this lawsuit was initiated. However, Southern correctly concedes that its cross-motion for summary judgment to recover the commission

was rendered moot upon the grant of summary judgment to AVCO. Therefore, it is not at issue on appeal and we need not decide the controversy over the true "sale" date.

the Agreement in this case is determined by the rights of the Binswanger Company. If the Binswanger Company is barred from recovery, so too is Southern. In other words, if the Binswanger Company does not have shoes, Southern has nothing to step into. We have, after our review of this record, determined that Binswanger was shoeless.

Tennessee Code Annotated, Section 62–13–110(a)(1) provides: "Any person acting as a broker, affiliate broker or time share salesperson without first obtaining a license is guilty of a Class B misdemeanor."

"Broker" is defined as:

[A]ny person who for a fee, commission, finders fee or any other valuable consideration, *or with intent or expectation of receiving the same from another,* solicits, negotiates or attempts to solicit or negotiate the listing, sale, purchase, exchange, lease or option to buy, sell, rent or exchange for any real estate or of the improvements thereon or any time-share interval as defined in the Tennessee Time–Share Act ... collects rents or attempts to collect rents, auctions or offers to auction, or who advertises or holds himself out as engaged in any of the foregoing[.]

Tenn.Code Ann. § 62–13–102(2)(A) (1990) (emphasis added).

Tennessee Code Annotated, Section 62–13–103(a) provides:

Broker or affiliate identified by single act.—(a) Any person who, directly or indirectly for another, with the intention or upon the promise of receiving any valuable consideration, offers, attempts or agrees to perform, or performs, any single act defined in § 62–13–102, whether as a part of a transaction, or as an entire transaction, is deemed a broker, affiliate broker or time share salesperson within the meaning of this chapter.

The written brochure presented when the Binswanger Company solicited AVCO in December 1990 advertised the Binswanger Company as "the nation's leader in the acquisition and disposition of modern, first-class, one-story manufacturing and warehouse facilities." The Binswanger Company solicited the listing of AVCO's real es-

tate at AVCO's Tennessee offices. The Binswanger Company negotiated the terms of the listing with AVCO's in-house counsel in Nashville, Tennessee, and entered into a Sales Listing Agreement upon AVCO's promise to pay a real estate commission. The Binswanger Company charged AVCO under the Sales Listing Agreement for expenses incurred in preparing and distributing sales material describing the property; it received payment for those expenses and, through its chairman, the Binswanger Company made demand upon AVCO's parent to pay a commission under the Sales Listing Agreement after the property was sold by AVCO to MTA. The Binswanger Company was acting as a broker within the meaning of the statute when it committed these acts. The Binswanger Company was unlicensed when it committed each of the acts. Therefore, the elements of the offense described in Tennessee Code Annotated, Section 62–13–110(a)(1) are established. These acts do not, as asserted by Southern, constitute a good faith effort to comply with the Act. A contract made in violation of a criminal statute is illegal and unenforceable in Tennessee, and the courts of this State "will not enforce contracts made in open violation of the law, and will give no relief either by way of enforcing the contract or in giving damages for its breach." *Peterson v. Cunningham,* 6 Tenn.App. 427, 431 (1927). When the Binswanger Company offered and agreed to perform real estate brokerage services without a license, upon the promise of receiving a fee from AVCO, it entered into a contract expressly condemned by a criminal statute of Tennessee, and is therefore barred as a matter of law from seeking to enforce the contract and from recovering damages for its breach. *Singer Mfg. Co. v. Draper,* 103 Tenn. 262, 52 S.W. 879 (1899).

Southern argues that no violation of the statute occurred because the Binswanger Company intended from the outset to assign its right to receive a commission under the Sales Listing Agreement to Southern and, in fact, made such an assignment. It is Southern's insistence that the Binswanger Company solicited and entered into the Agreement without the "expectation of receiving" any fee or other valuable consideration from AVCO.

Southern therefore contends that the elements required to make out an offense under the Act are missing. It is undisputed that the Binswanger Company did invoice AVCO $29,870.00 for advertising and promotional expenses under the Sales Listing Agreement and that AVCO paid the Binswanger Company for this billing. The statute condemns contracts by unlicensed brokers who charge or expect to receive a fee, commission, finder's fee, or any other valuable consideration. Tenn.Code Ann. § 62–13–102. Southern's argument, that the Binswanger Company did not expect to receive valuable consideration from AVCO under the Sales Listing Agreement, is incredible when the Binswanger Company clearly billed AVCO for, and received payment of, $29,870.00 for services performed under the Agreement. The Sales Agreement itself belies this argument. The Sales Agreement expressly provides for the payment of a commission to the Binswanger Company and, additionally, the Binswanger Company made demand upon AVCO's parent for payment of the commission in December 1991, several months after it allegedly assigned these rights to Southern. The Binswanger Company's demand for payment forecloses any claim that the Binswanger Company did not intend to receive any commission from AVCO.

Tennessee Code Annotated, Section 62–13–103 defines brokering activity to include any offer, attempt, or agreement to perform brokerage services made "upon the promise of receiving any valuable consideration" from another.

The Sales Listing Agreement between the Binswanger Company and AVCO constitutes an agreement by the Binswanger Company to perform brokerage services for AVCO, made upon AVCO's promise to pay a commission and to pay for other services. The actual receipt or expectation of receipt of consideration is not an absolute requirement. Tenn.Code Ann. § 62–13–103. All that is necessary is an offer, attempt, agreement to perform or performance of brokerage services made upon a promise of receiving compensation from the other party.

■ We are of the opinion that the Binswanger Company's illegal activity in procuring the Sales Agreement, and its failure to obtain a license, precludes the Binswanger Company from receiving any payment of a commission on the sale and bars enforcement of the Agreement entered into between the Binswanger Company and AVCO. As we have stated, Southern, as the assignee of the Binswanger Company, steps into the shoes of the Binswanger Company. Since the Binswanger Company is shoeless, so is Southern. The trial court properly granted summary judgment.

We have considered each of the other contentions raised by Southern and find them to be likewise without merit.

The judgment of the trial court in granting the motion for summary judgment is affirmed and the cause remanded to the trial court for the enforcement of its judgment, and for any further necessary proceedings. Costs on appeal are assessed to Southern.

TODD, P.J., and KOCH, J., concur.