# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 14, 2010 Session

## ROGER WILKES, ET AL. v. SHAW ENTERPRISES, LLC

### Appeal from the Chancery Court for Maury County
### No. 03-708      Robert L. Jones, Judge

### No. M2010-00105-COA-R3-CV - Filed May 4, 2011

This is an appeal of the trial court's determination on remand that the Appellee did not breach the parties' contract when it constructed the Appellant's house without through-wall flashing and weep holes, as required by the applicable building code. The parties' contract provided that the builder would construct the house in accordance with "good building practices." The trial court concluded the builder constructed the house in accordance with good building practices even though it was not in strict conformance with the building code. We affirm this holding. The Appellants also appeal the trial court's failure to award them their attorneys' fees and costs incurred in their first appeal. We remand this matter to the trial court with directions that it award to Appellants reasonable attorneys' fees and costs incurred in their first appeal, as determined by the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Jean Dyer Harrison, Nashville, Tennessee, for the appellants, Roger Wilkes and Vittoria Wilkes.

Barton E. Kelley, Columbia, Tennessee, for the appellee, Shaw Enterprises, LLC.

## OPINION

## I. BACKGROUND

This is the second time this construction case has been appealed to this court. The initial trial was held in February 2006, and the plaintiffs appealed a part of the trial court's decision to this court. In an Opinion dated March 14, 2008[1] ("2008 Opinion"), we remanded the case to the trial court on two discreet issues, and a new trial was held on November 4 and 5, 2009. The plaintiffs were not satisfied with the trial court's second decision, and they have filed a second appeal.

The parties' dispute centers on the construction of a brick veneer house by the Defendant/Appellee Shaw Enterprises, LLC ("Shaw") and the purchase of this house by Plaintiffs/Appellants Roger and Vittoria Wilkes ("the Wilkeses") in 2002. The Wilkeses paid Shaw $259,900 for the house, which is located in Maury County, Tennessee.

Prior to purchasing the house, the Wilkeses and Shaw entered into a Purchase and Sale Agreement that contained the following language:

> Seller agrees to erect the house in substantial accordance with the plans and specifications selected and **in accordance with good building practices**. Seller reserves the right to make such changes or substitutions in the construction of the residence (a) as may be required, authorized, or approved by governmental agencies having jurisdiction therefor, or (b) as Seller may deem appropriate so long as materials of equal or better quality are used. (Emphasis added.)

Shortly after purchasing their house, the Wilkeses discovered water leaking through the vaulted ceiling into the front hall of their house as well as into the basement from the front windows. The Wilkeses contacted Shaw's owner, Randall Shaw. Mr. Shaw attempted to repair the leaks and some other problems the Wilkeses detected, but failed to stop the leaks completely or correct the other problems to the Wilkeses' satisfaction. The Wilkeses then hired an inspector, an engineer, and an architect to inspect the house to determine the full extent of construction defects in the house. As a result of these inspections, the Wilkeses learned, among other things, that Shaw had not installed through-wall flashing and weep

---

[1]Our first decision can be found at *Wilkes v. Shaw Enterprises*, *LLC*, M2006-01014-COA-R3-CV, 2008 WL 695882 (Tenn. Ct. App., March 14, 2008).

holes[2] when the house was built.

The Wilkeses filed a complaint against Shaw in the Chancery Court for Maury County alleging fraud, breach of contract, violations of the Tennessee Consumer Protection Act, negligent, intentional, and/or fraudulent misrepresentation, and ordinary negligence. The case was initially tried without a jury in Maury County Chancery Court on February 6 and 7, 2006.

## II. THE FIRST TRIAL

Based on the evidence introduced during the first trial, the trial court found that when the Wilkeses' house was constructed in 2002, contractors in Maury County were bound by the 1995 CABO (Council of American Building Officials) One and Two Family Residential Code ("1995 CABO Code"). The1995 CABO Code required houses with brick veneers to have through-wall flashing above the windows and doors. Despite this requirement, however, the evidence showed that a majority of the houses built in Maury County up to and including 2002 did not have either through-wall flashing or weep holes. The director of the building and zoning office for Maury County testified that Maury County's building inspectors did not inspect for or require through-wall flashing or weep holes until after this dispute arose and its inspectors became aware of the issue.

The building inspector did not enforce this provision of the code with respect to the Wilkeses' house, and the inspector granted Shaw a certificate of occupancy for the Wilkeses' house even though Shaw had failed to include through-wall flashing or weep holes in the house.[3] The trial court found that other than the lack of flashing and weep holes, most of the other construction defects the Wilkeses complained of were not code violations.

At the end of the trial, the trial court concluded the Wilkeses' house contained defects necessitating an award of damages for their breach of contract claim.[4] A witness for the Wilkeses testified that it would cost approximately $156,727 to make all the repairs the Wilkeses wanted. This price included removing the entire brick facade of the house,

---

[2]For purposes of this case, through-wall flashing is flashing that is placed through brick veneer walls over windows and doors to direct water that seeps through the bricks or mortar to the outside of the walls. Weep holes are holes in the brick or mortar above the flashing through which water can pass.

[3]For a more complete summary of the evidence introduced at the first trial, *see Wilkes v. Shaw Enterprises*, *LLC*, 2008 WL 695882, at *2-5.

[4]The Wilkeses dismissed their fraud, misrepresentation, and consumer protection claims on the day of trial.

installing the flashing and weep holes, and reapplying the brick veneer. The trial court found this estimate grossly disproportionate to the value of the house and ultimately determined that $31,879.15 was the appropriate amount to award the Wilkeses. This amount included $10,000, which the trial court determined was just compensation for partial reasonable repairs to the brick around the windows and doors to install the flashing and weep holes, or to compensate for a decrease in the value of what the house would have been worth if it had been code compliant. Pursuant to the Wilkeses' request for attorneys' fees and costs, the court awarded the Wilkeses $7,560.21 for attorneys' fees and $1,500 for expert fees.

The Wilkeses appealed the trial court's decision, claiming the trial court erred (1) by not requiring the Maury County inspectors to comply with the building code in effect when their house was built in 2002; (2) in applying an incorrect standard of workmanship; (3) in basing its award of damages in part on the diminution of value as opposed to the cost of repair; and (4) in failing to award them a higher amount of attorneys' fees.

### III. 2008 OPINION

In our 2008 Opinion, we explained that while the Maury County building inspectors are required to comply with the building code the county adopts, there is no private right of action for an inspector's failure to do so. Tennessee Code Annotated §5-20-102(a) permits the governing body of any county in Tennessee to adopt (or repeal) a resolution that incorporates by reference the provisions of any building code so long as the subject area is not regulated by the state itself. The statutory scheme provides that if a "person, firm or corporation or agent" fails to comply with a provision of the applicable code, that person, firm, corporation, or agent commits a Class C misdemeanor. Tenn. Code Ann. §5-20-105(b)(1). Thus, while the Wilkeses would prefer the situation to be different, the only way an individual can enforce this provision is by bringing infractions or perceived infractions of the applicable building code to the attention of the county attorney or other enforcement official to bring an action to enforce compliance with the code. *See* Tenn. Code Ann. §5-20-104 (county attorney or other official may enforce provisions of building code by instituting injunctive procedure).

We next addressed the standard of workmanship that was applicable to Shaw in this case. As quoted above, the parties' Purchase and Sale Agreement provided that Shaw would follow "good building practices" in building the Wilkeses' house. Because the parties' contract set forth a particular standard of workmanship, Shaw was not required to comply with an implied warranty standard that would have applied had the contract been silent on this issue. *Wilkes v. Shaw Enterprises*, 2008 WL 695882, at *8; *see Dixon v. Mountain City Const.*, 632 S.W.2d 538, 541 (Tenn. 1982) (implied warranty that construction is free from major structural defects and is constructed in workmanlike manner only applies when

contract is silent about warranty terms)*; Carter v. Krueger*, 916 S.W.2d 932, 935 (Tenn. Ct. App. 1995) ("in the absence of express plans and specifications, the standard of workmanship prevailing in the area coupled with conformity to the applicable codes . . . is the standard by which the appellee's performance is to be tested"). Therefore, the implied standard of workmanship set forth in *Carter v. Krueger* was not the appropriate standard by which to measure Shaw's level of workmanship.

After the initial trial in 2006, the trial court did not specifically find Shaw had breached the contractual standard of care. Instead, it applied a standard of care based on the implied warranty that comes into play when the contract does not specifically reference a different standard. As a result, we remanded the case back down to the trial court with directions that it determine whether Shaw's construction of the Wilkeses' house breached the contractual standard of care: good building practices. *Wilkes v. Shaw Enterprises*, 2008 WL 695882, at *9.

With regard to the trial court's award of damages, we reviewed the ways a trial court may assess damages for a breach of construction contract. We confirmed that the measure of damages will generally be the cost of repair, unless the repairs are not feasible or the cost is disproportionate to the diminution in value. *Wilkes v. Shaw Enterprises*, 2008 WL 695882, at *9-10. As this court explained in *GSB Contractors v. Hess*, if the cost of repairs is "disproportionate when compared with the difference in value of the structure actually constructed and the one contracted for, the diminution value may be used instead as the measure of damages." 179 S.W.3d 535, 543 (Tenn. Ct. App. 2005). The defendant, however, has the burden to show the cost of repairs is unreasonable when compared with the diminution in value. Therefore, if the defendant fails to meet this burden by introducing credible proof of the building's diminution in value, the trial court must base its measure of damages on the cost of repairs. *Id*. at 543-44.

In its first judgment, the trial court wrote, with regard to the diminution in value to the Wilkeses' house based on the lack of through-wall flashing and weep holes:

> [T]he court has concluded that complete destruction of the brick veneer and total replacement of the same is unreasonably disproportionate for a technical code violation that did not exist before 1995 and was not being enforced when this dwelling was constructed. Instead the court is approving $10,000 for partial reasonable repairs or to compensate for a decrease in the value of what the house would have been if code compliant.

The trial court awarded the Wilkeses $10,000 for missing flashing and weep holes, and referred to it as a cost of repair or diminution in value. However, after reviewing the

record from the first trial, we concluded in our 2008 Opinion that Shaw failed to introduce adequate evidence of the diminution in value of the Wilkeses' house resulting from the defects. Therefore, in addition to our direction that the trial court determine whether Shaw complied with the contractual standard of "good building practices," we remanded the diminution in value issue to the trial court with instructions for the parties to present evidence as to the diminished value of the house with the defects the Wilkeses had proved. Our expectation was that "the Chancellor w[ould] make a determination of whether the cost of repair is unreasonable and disproportionate when compared to the diminished value of the house." *Wilkes v. Shaw Enterprises*, 2008 WL 695882, at *11.

As to the Wilkeses' attorneys' fees and costs, we concluded, based on the language of the parties' Purchase and Sale Agreement, that the Wilkeses were entitled to recover their reasonable attorneys' fees and costs both at the trial level as well as on appeal. The Wilkeses argued in their first appeal that the trial court abused its discretion in awarding them less than they had actually spent on attorneys' and experts' fees. The trial court found the total amount of fees the Wilkeses' sought to recover was excessive and not warranted based on the evidence and theories proved at trial. The trial court therefore awarded the Wilkeses $7,560.21 for attorneys' fees and $1,500 for experts' fees. We concluded in the 2008 Opinion that the trial court did not abuse its discretion in awarding these amounts to the Wilkeses. However, we also concluded that the Wilkeses were entitled to their attorneys' fees on appeal. Based on that conclusion, we remanded the matter to the trial court to make a determination of proper attorneys' fees the Wilkeses incurred on appeal. *Wilkes v. Shaw Enterprises*, 2008 WL 695882, at *12.

## IV. SECOND TRIAL AFTER REMAND

The same judge who had conducted the first trial in 2006 held a second trial on November 4 and 5, 2009. He heard testimony and received evidence to determine (1) whether Shaw breached the contractual standard of "good building practices" when it failed to install through-wall flashing and weep holes as required by the 1995 CABO Code; and (2) the diminution in value of the Wilkeses' house as a result of the construction defects.

On the issue of good building practices, the Wilkeses offered testimony from the Maury County director of the building and zoning office and from a general contractor, along with the general contractor's expert report. The director of the building and zoning office is responsible for enforcing the building code applicable to Maury County, and he testified that despite the 1995 CABO Code's requirement that houses include weep holes, the majority of homes built in Maury County from 1995 through 2002 were built without weep holes. He testified that flashing has always been required. The Wilkeses' general contractor testified the Wilkeses' house was not constructed in accordance with good building practices because

"the flashings weren't done properly, the through-wall flashings, and the housewrap and the flashing application was letting water in."

Shaw offered testimony and an expert report from a structural engineer and from a certified real estate appraiser. The structural engineer testified the Wilkeses' house was built in accordance with good building practices. He testified that the housewrap surrounding the Wilkeses' house, which is under the bricks, prevents water intrusion into the house and served the same purpose as the through-wall flashing and weep holes. Shaw's appraiser testified that part of his analysis as a real estate appraiser was to determine whether a house was built in accordance with good building practices. Shaw's appraiser testified that in his opinion the Wilkeses' house was built in accordance with good building practices.

On the issue of diminution in value, Shaw's real estate appraiser testified that the market value of weep holes and flashing was $500, and that the presence or absence of weep holes and flashing did not cause houses to be sold or prevent them from being sold. His appraisal of the Wilkeses' house as of November 2002, when the Wilkeses purchased the house, was $272,500. After taking into account the diminution in value of $500 due to the lack of flashing and weep holes, Shaw's appraiser determined the house was worth $272,000.

The Wilkeses introduced the testimony and expert report of a real estate appraiser as well to determine the diminution in value of their house. The Wilkeses' appraiser valued the house at $220,000 and noted in his report that the house "appears to be below standards of the building code, which could be a very negative factor in the marketability of the subject property if properly disclosed."

## V. TRIAL COURT'S SECOND DECISION

After listening to all the testimony and reviewing the exhibits introduced, the trial court stated in open court:

> [I]f the brick veneer houses being built in and near Maury County in 2002 and preceding years were not adding flashing at the basement of masonry walls – not at the basement, at the base of masonry walls and over windows, maybe even under windows – or doors and windows, and Shaw Enterprises built 30-something houses in a nice subdivision with approximately one acre lots and the houses selling from $250,000 to $400,000, it doesn't seem to make sense that Shaw Enterprises was not using good building standards and practices that had been in existence for a short period of time and not enforced at all up until this house was completed and a certificate of occupancy issued, should not be a basis for finding a breach of contract under the law of this case as stated by

-7-

the Court of Appeals.

At the conclusion of the hearing, the trial court said:

[T]he Court finds that the failure of this house to have flashing and weep holes – it has roof flashing, I don't mean that. But to have the behind-the-masonry-wall flashing and weep holes is not a breach of the contract entitling the plaintiffs to damages.

In its Revised Judgment after Remand and Additional Proof, the trial court wrote that the Wilkeses' house "was built in accordance with 'good building practices' without through-the-wall flashing and weep holes." The court agreed with the Wilkeses that through-wall flashing and weep holes constituted good building practices, but explained that it had found "no competent and credible evidence in the record that a brick veneer house built in 2002 in Maury County without through-the-wall flashing and weep holes violated recognized standards of good building practices at that time in Maury County."[5]

As a result of this finding, the trial court held:

The absence of through-the-wall flashing and weep holes, even though violating existing building codes, was in harmony with good building practices at the time in Maury County and does not constitute a breach of contract for which the Plaintiffs may recover damages. Therefore, the conclusion following the first trial that the Plaintiffs were entitled to $10,000 for [flashing and weep holes] has now been eliminated, as the Court now finds that alleged defect was not a breach.

Separate and apart from the flashing and weep holes, the trial court concluded the Wilkeses were entitled to recover damages for the other defects they proved based on the cost of repair estimates introduced during the first and second trials, which the court adjusted for credibility reasons. Thus, the trial court recalculated the amount the Wilkeses were entitled to recover and concluded they were entitled to $17,721 for the value of repairs for defects in violation of good business practices, and an additional 15%, or $2,658.15, for management, overhead, and profit of a licensed contractor. This resulted in a judgment in the amount of $20,370.15. The trial court awarded the Wilkeses attorneys' fees through the

---

[5]The trial court noted the Wilkeses' construction expert testified that a brick veneer house without through-wall flashing and weep holes was not in accordance with good building practices, but the trial court did not find his testimony convincing because this individual's experience was limited to Davidson and Williamson Counties and did not extend to Maury County.

first trial in the amount of $5,094.78 and discretionary costs in the amount of $1,500. The total judgment following the second trial totaled $26,973.93.

With respect to the diminution in value issue, the trial court wrote:

> The evidence of diminished value offered by the parties in the second trial is not sufficiently credible to outweigh the more credible evidence supporting use of the cost of repair as the appropriate method of fixing damages for remaining defects, many of which can be easily and inexpensively repaired. It was only this Court's erroneous attempt to award damages in the first trial for the absence of through-the-wall flashing and weep holes that caused the misapplication of diminished value method of fixing damages.

## VI. THE WILKESES' SECOND APPEAL

Following the trial court's decision after the second trial, the Wilkeses duly filed the instant appeal. They contend the trial court erred by concluding that Shaw's failure to construct their house using through-wall flashing and weep holes as required by the 1995 CABO Code was not a breach of the contractual standard of good building practices. The Wilkeses also argue the trial court erred in failing to award the Wilkeses the attorneys' fees they had incurred in their first appeal in accordance with our 2008 Opinion. We will address each of these issues in turn.

### A. STANDARD OF REVIEW

Our review on appeal of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). We review a trial court's conclusions of law *de novo*, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

Where the trial court has seen and heard witnesses, its judgment regarding their credibility and the weight to be given their testimony is accorded considerable deference on appeal. *Clark v. Nashville Machine Elevator Co. Inc.*, 129 S.W.3d 42, 46 (Tenn. 2004); *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999); *Tenn-Tex Properties v. Brownell-Electro, Inc.*, 778 S.W.2d 423, 425-26 (Tenn. 1989).

## B. Good Building Practices

The Wilkeses essentially argue that Shaw's failure to follow the 1995 CABO Code when it built the Wilkeses' house in 2002 was a breach of the parties' contract as a matter of law. We do not agree. As we explained in our 2008 Opinion, Shaw was not bound by any implied warranty that its construction of the Wilkeses' house would comply with the applicable codes because the parties' Purchase and Sale Agreement set forth a different standard. Indeed, we stated in our 2008 Opinion: "[T]he specific standard provided for in the contract prevails over the implied standard of workmanship because the contract is not silent on the issue of the standard to which the contractor will be held." *Wilkes v. Shaw Enterprises*, 2008 WL 695882, at *8 (citing *Dixon v. Mountain City Const.*, 632 S.W.2d at 541 (implied warranty does not apply to contract containing a different standard of performance) and *Carter v. Krueger*, 916 S.W.2d at 935 (standard of workmanship prevailing in the area together with conformity to the applicable codes is the standard by which contractor's work is to be tested only if parties' contract does not contain a different standard)).

Shaw agreed in the Purchase and Sale Agreement to erect the house "in accordance with good building practices." While Randall Shaw testified that as a builder he is required to comply with the applicable building code, compliance is not the contract standard. Rather, we are concerned solely with whether Shaw breached the standard of "good building practices" when it deviated from the code's requirement that it include through-wall flashing and weep holes when it constructed the Wilkeses' house in 2002.

The Wilkeses argue in their brief that "there is simply no way for a contractor to contract to build a home that does not comply with the code because to do so would violate public policy and would in effect be an illegal contract." The Wilkeses rely on *Ledbetter v. Townsend*, 15 S.W.3d 462 (Tenn. Ct. App. 1999) and *Binswanger Southern (N.C.) v. Textron*, 860 S.W.2d 862 (Tenn. Ct. App. 1993) in support of this position, but the contracts at issue in those cases were void *ob initio*, and so they lend no support to the Wilkeses' argument.

In *Ledbetter v. Townsend*, Mr. Ledbetter attempted to enter into a contract to purchase a liquor store from the then-owner, Ms. Townsend. 15 S.W.3d at 463. There was a statute in effect at that time precluding retailers licensed under Tenn. Code Ann. §57-3-204 from operating more than one liquor store, and Mr. Ledbetter, who was so licensed, was already operating another liquor store when he executed this contract. *Id*. at 465. Thus, the *Ledbetter* court concluded the purported contract Mr. Ledbetter and Ms. Townsend executed for the purchase of Ms. Townsend's liquor store violated Tenn. Code Ann. §57-3-406, rendering the contract void and unenforceable from the beginning. *Id*. at 466.

The contract at issue in *Binswanger Southern (N.C.) v. Textron* related to the sale of real estate. Binswanger Southern (N.C.) entered into a Sales Listing Agreement with AVCO, and after the property at issue was sold, Binswanger sued to collect the commission to which it claimed it was entitled. 860 S.W.2d at 863-65. When Binswanger executed the purported contract, it was not licensed as a real estate broker in Tennessee. *Id.* at 866. Tennessee law requires brokers be licensed, and if a person or entity acts as a broker without first obtaining a license, that person or entity is guilty of a Class B misdemeanor. Tenn. Code Ann. §62-13-110(a). Because Binswanger was not licensed as required when it executed the agreement, the court held the agreement was void and unenforceable. 860 S.W.2d at 867.

In contrast to the contracts at issue in *Ledbetter* and *Binswanger*, which were void as a matter of law when executed, the contract between the Wilkeses and Shaw is valid and enforceable. Shaw is a licensed contractor, and the Wilkeses have pointed to nothing defective about the Purchase and Sale Agreement, or about the circumstances when the agreement was executed, that affects its legality. We therefore reject the Wilkeses' contention that the contract is illegal because Shaw failed to install through-wall flashing and weep holes. Essentially, the Wilkeses argue that the agreement necessarily requires compliance with building codes. Where this argument fails, however, is their equating compliance with the standards for performance that the parties agreed to in their contract.

This argument must fail, as explained in the cases discussed earlier that clearly state the parties can agree to a particular standard. We already explained in the 2008 Opinion that the Wilkeses do not have a private right of action against Shaw for its alleged violation of the 1995 CABO Code. Their argument that the contract is unenforceable if it is not read to require building code compliance is another attempt at pursuing private enforcement. The Wilkeses have no basis on which to argue Shaw's violation of the building code turned the Purchase and Sale Agreement into an illegal contract.

The Wilkeses next argue Shaw may not rely on the *ultra vires* action of the Maury County Codes Department to excuse its failure to follow the 1995 CABO Code requiring the installation of through-wall flashing and weep holes. Whether or not the Maury County Codes Department acted outside of its authority by granting Shaw a certificate of occupancy for the Wilkeses' house is not at issue in this case. Shaw acknowledges it was bound by the building code and that it should have installed the flashing and weep holes. There is no evidence Shaw relied on any *ultra vires* action by the Maury County Codes Department to excuse its failure to install these features. As we have said, the only issue before us is whether or not Shaw's failure to install the flashing and weep holes breached the contractual standard of care of "good building practices."

After hearing the testimony the parties offered on the issue of "good building

-11-

practices," the trial court concluded Shaw's failure to include the through-wall flashing and weep holes did not constitute a breach of its contract with the Wilkeses. The Wilkeses offered expert testimony from a general contractor that the Wilkeses' house was not built in conformance with good building practices without the flashing and weep holes, while Shaw's structural engineer provided expert testimony that the house was constructed in conformance with good building practices despite the lack of flashing and weep holes. When experts present legitimate conflicting opinions, it is the function of the trier of fact, the trial court in this case, to determine the weight to give the evidence. *Jackson v. Joyner*, 309 S.W.3d 910, 916 (Tenn. Ct. App. 2009); *Thomas v. Aetna Life & Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. Ct. App. 1991). We cannot say the trial court erred by finding Shaw's proof more reliable than the Wilkeses' proof, or that the evidence preponderated in favor of the Wilkeses and against Shaw, as we must to overturn the trial court's findings of fact.

Concluding the evidence does not preponderate against the trial court's finding that Shaw constructed the Wilkeses' house in accordance with good building practices, we affirm the trial court's holding that Shaw's failure to include through-wall flashing and weep holes in the Wilkeses' house did not constitute a breach of the parties' Purchase and Sale Agreement.[6]

### C. ATTORNEYS' FEES AND COSTS

The Wilkeses' final issue concerns the trial court's failure to award them their attorneys' fees and costs incurred in their first appeal. Paragraph 16 of the Purchase and Sale Agreement provides in pertinent part:

> [i]n the event that any party hereto shall file suit for breach or enforcement of this Agreement (including suits filed after closing which are based on or related to the Agreement), the prevailing party shall be entitled to recover all costs of such enforcement, including reasonable attorney's fees.

The Wilkeses are correct that in the 2008 Opinion we held the Wilkeses were entitled to recover their attorneys' fees and costs from the appeal, and that we remanded the case to the trial court with directions that it determine the "proper attorney's fees and costs incurred on appeal."

---

[6]Because we affirm the holding that Shaw did not breach the contract by failing to include through-wall flashing and weep holes, we need not address the diminution in value issue we charged the trial court with determining. This is because the only alleged defects to which the diminution in value was relevant were the flashing and weep holes.

On remand, the trial court wrote with respect to this issue:

> Since the outcome of the appeal and retrial was more favorable to the Defendant than to the Plaintiffs, IT IS FURTHER ORDERED that the Plaintiffs' request for attorney fees and discretionary costs incurred during and after the appeal be, and is hereby, denied. Obviously, the Defendant incurred similar expenses for appeal and retrial, even though the Defendant deposited the amount of the first judgment with the clerk in the apparent hope of avoiding an appeal and the likely costs of continuing litigation.

When this court held the Wilkeses were entitled to recover their attorneys' fees and costs on appeal, that holding became the law of the case, which the trial court was bound to follow. *See Memphis Publ'g Co. v. Tennessee Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998) (under "law of the case" doctrine, appellate court's decision on an issue of law is binding in later trials of the same case). The trial court thus did not have the authority to decide the Wilkeses were not entitled to their attorneys' fees and costs incurred in the first appeal. The Tennessee Supreme Court addressed this issue in *Barger v. Brock*:

> It is a controlling principle that inferior courts must abide the orders, decrees and precedents of higher courts. The slightest deviation from this rigid rule would disrupt and destroy the sanctity of the judicial process. There would be no finality or stability in the law and the court system would be chaotic in its operation and unstable and inconsistent in its decisions.

535 S.W.2d 337, 341 (Tenn. 1976); *see also State v. Irick*, 906 S.W.2d 440, 443 (Tenn.1995) (inferior courts must follow orders of higher courts).

Therefore, we remand this case to the trial court with directions that it determine and award to the Wilkeses the appropriate amount of attorneys' fees and costs incurred in their first appeal to this court.[7]

The judgment of the trial court holding Shaw did not breach the parties' contract by failing to construct the Wilkeses' house using through-wall flashing and weep holes is affirmed, but its refusal to award the Wilkeses their attorneys' fees and costs incurred from their first appeal is reversed. This case is remanded to the trial court with directions that it determine the Wilkeses' reasonable attorneys' fees and costs incurred in their first appeal.

---

[7]We do not address the trial court's reduction in attorneys' fees it awarded the Wilkeses from the first trial upon remand because that issue was not raised on appeal.

Costs of this appeal are taxed to Roger Wilkes and Vittoria Wilkes, for which execution may issue if necessary.


_____
PATRICIA J. COTTRELL, JUDGE